## James Sword and another v. Orson Keith.

*Services rendered: Subsequent written promise: Agreement to pay out of one's estate after death: Consideration.* Where one renders valuable services for another in his lifetime, under an understanding between them that he is to be compensated therefor in some way by a provision in the other's will or otherwise, though such understanding was not definite as to the mode of compensation, and a written agreement is afterwards made whereby the latter undertakes, in order to secure the payment for such services, to give the former a claim on a farm then in his possession, or the amount of one thousand dollars if he should die before he made a will, the consideration is sufficient, and the agreement binding.

*Services rendered: Promise to pay out of one's estate after death: Statute of limitations.* An agreement whereby one undertakes to compensate another for services rendered for him, out of his estate after his death, is binding on the estate of such person deceased; and the statute of limitations would not commence to run upon such an undertaking until after the death of the person executing.

*Estates of deceased persons: Claims: Services: Consideration.* Where one has agreed in writing, in consideration of services performed for him by another, to let the latter have a claim on a certain farm, or the amount of one thousand dollars if he should die before he made a will, and afterwards dies intestate, having refused to allow the claim on the farm, such agreement becomes a binding obligation upon the estate for the payment of the thousand dollars.

*Services rendered: Compensation by will: Written promise to pay: Consideration.* Where one has rendered valuable services for another on an understanding that he was to be compensated therefor by a provision in the other's will for the amount thereof or more, and afterwards a written agreement is executed to secure payment for such services, whereby the employer agrees to let him have one thousand dollars if he should die before making such will, the agreement would be upon a sufficient consideration, and would be binding.

*Contracts: Satisfaction: Payment.* If, however, one who has contracted, in consideration of services rendered, to let another have a claim upon a certain farm, or the amount of one thousand dollars if he should die before he made a will, afterwards sells said farm to the other, and makes a deduction from the price, which is accepted in satisfaction of such agreement, and as payment of the one thousand dollars, the latter cannot afterwards recover for said services, or upon said agreement.

*Charges to the jury: Various hypotheses.* A party is entitled to have specific charges upon the law applicable to each of the various hypotheses or combinations of facts which the jury from the evidence might legitimately find, and which have not been covered by other instructions.

*Requests to charge: Double proposition: Practice.* A request to charge, embracing a double proposition stated disjunctively, must be correct throughout, or it may be refused as a whole; and a modification of it which is supported by the evidence as to one branch or element of such proposition is not erroneous, though as to the other it be not supported by any evidence.

*Instructions to the jury: Construction: Promise to pay: Contemplated future services: Evidence: Improvements.* Where, in modification of a request to charge that the claimant cannot recover upon a certain written agreement introduced in evidence "for any services, labor or improvements, made or performed by him since the making and delivery of said written agreement," the court

SWORD *v.* KEITH.

has added: "Unless you find said services were a part of the consideration of said written agreement; and if you so find he can recover," it is held the term "services," in such modification, must be construed in a collective sense, to embrace the "services, labor or improvements" mentioned in the request; and where the evidence tends somewhat to show that, as to the improvements at least, the written agreement was given in contemplation of future as well as past services, such modification is not open to the objection that it assumed there was evidence in the case which was not in it.

*Services of minor : Promise to pay : Evidence : Future services.* The ruling, that a promise to render services after the writing had been made, would be a good and valid consideration therefor if rendered as agreed, is held sustained by the evidence, where the circumstances shown are such as would authorize the inference that both parties acted upon the understanding that such services would continue to be rendered ; this would be equivalent to a promise.

*Services of minor : Promise to pay : Legal obligation : Consideration.* Where services have been performed or improvements made for another by one during his minority, under an agreement or with the understanding that they should be paid for, the person for whom it was done would be under legal obligation, after performance, to pay for the same.

*Infancy : Adopted child : Services of minor : Promise to pay : Consideration.* Where a minor has been adopted into a family and performed labor for his adopted father as a child would for a parent, in the absence of any agreement or understanding to that effect, he would not be entitled to recover for services thus performed during his minority ; but where such services have been performed under an understanding or agreement that they were to be paid for, they would constitute a valid consideration for a subsequent promise to pay.

*Requests to charge : Points covered by other charges : Practice.* Requests to charge, though correct in themselves, may properly be refused where the whole substance of them has been already properly submitted in answer to other requests.

*Infancy : Services of infant : Promise to pay after one's death : Right of action : Majority.* Instructions which make the right of one to recover from the estate of a deceased person for services performed during his minority, depend on his right to sustain a suit for them on coming of age, are erroneous where such services have been merged in an agreement to pay at the death of the person for whom they were performed, for in that case there could be no recovery until the happening of that event, but his estate would then be liable.

*Parent and child : Mother : Emancipation : Presumptions.* Where, on the death of his father, a child has been adopted into the family of his uncle, who stood to him *in loco parentis*, and to whom he sustained the relation of an adopted child till he came of age, it will be presumed, nothing appearing to the contrary, after the lapse of twenty years from his majority, that his mother has assented to his arrangement with such uncle, whatever it was, and to his emancipation from any parental control or rights she might have asserted at the time.

*Charge to the jury : Construction : Abstract propositions.* Instructions to the jury, and modifications of proposed instructions, are to be construed not as abstract propositions, but as they would be understood in the light of the particular circumstances of the case as disclosed by the evidence.

*Instructions to jury : Improvements made on lands of another : Promise to pay.* And instructions which standing alone would seem to assert that a promise to pay for improvements made upon a farm of another by one in possession, for his own benefit, would be valid though the improvements should be of no value or benefit to the owner, are held not erroneous, though incorrect as abstract propositions, in a case where the improvements referred to are shown by the evidence to be of a permanent character, which would add

Sword *v.* Keith.

to the value of the premises, and did actually increase their price on a subsequent sale, and where the promise referred to would naturally be understood to mean a promise made at or before the time the improvements were made.

*Request to charge: Qualification construed: Contract to purchase lands: Improvements.* The modification of a request to charge, that if the claimant ' occupied the farm as a purchaser, under a contract to purchase, and while so occupying made valuable improvements without any agreement with the owner at the time that he should be paid for such improvements, and afterwards forfeited the contract, or gave up the farm, he could not recover pay for those improvements," by the addition of the qualification: " unless it was agreed, at the time he gave up the farm, that he was to have pay for his improvements," is construed as meaning " unless it was agreed as a part of the arrangement, or as one of the conditions upon which he gave up the farm, or the purchase, that he was to have pay for his improvements; " and thus construed it is held not to be erroneous.

*Requests to charge: Modification: Misapprehension.* The modification of a request to charge, that if the written agreement in this case was intended as a gift, or a promise to make a gift of an interest in the farm, or of one thousand dollars out of the estate, then there was no sufficient consideration for the promise, etc., by inserting the qualifying words: " and not for services rendered " by the claimant for the decedent, is held not erroneous, but a proper qualification to prevent misapprehension by the jury of the true principle of law involved.

*Statute of frauds: Contract not performable within a year: Promise to pay after one's death.* A promise to pay for services rendered and improvements made, etc., out of the estate of the party benefited, after his death, is not within the statute of frauds *(Comp. L. 1871, § 4698),* as an " agreement that by its terms is not to be performed in one year from the making thereof," for at the time of its making it was possible to be performed within a year.

*Statute of limitations: Estates of deceased persons.* Under our statute *(Comp. L. 1871, § 7157)* the period of limitation, in case of the death of the party liable, is extended thirty days beyond six years, where otherwise it would have been six years under the statute.

*Requests to charge: Distinct propositions: Practice.* Where a request to charge contains two independent and distinct propositions, one of which is proper to be given and the other not, the proper course is, not to refuse it as a whole, but to refuse the erroneous proposition, and grant that which is correct.

*Evidence.* Where a party has testified to certain damaging admissions made by his adversary in a conversation at which others were present, and on the other side one of those present has testified that she heard all the conversation, which she gives in detail, contradicting the testimony of the other party directly and emphatically, it is not error to decline to permit a witness called in rebuttal, who was also present at such conversation, but who testifies that she did not give any attention to it, to testify whether the witness last aforesaid seemed to pay any attention to such conversation; such an inquiry is not sufficiently direct in its tendency to bring out any facts calculated to discredit the testimony of such other witness, to render its rejection erroneous.—Christiancy, J., dissenting.

*Re-opening case: Withdrawing an admission: Discretion.* The question of permitting a party, after the evidence has been closed, to withdraw any admission made on the trial, and to admit testimony to disprove the fact so admitted, on a showing of newly discovered evidence, is one of discretion; and the discretion was wisely exercised in this case in declining to permit it.

*Submitted on briefs October 29.     Decided January 29.*

**Error to Lenawee Circuit.**

SWORD *v.* KEITH.

*Keith, the defendant in error, presented his claim of one thousand dollars against the estate of deceased, before the commissioners appointed by the probate court to take proof of claims against the estate; and the commissioners having disallowed the claim, he appealed to the circuit court, where an issue was formed under the direction of the court, and the case was tried before a jury, who found a verdict in favor of Keith for the amount of his claim, upon which judgment was rendered; and the case is brought to this court by writ of error and bill of exceptions.    Thirty-eight errors are assigned upon the rulings of the court upon the admission and rejection of evidence, the refusal of requests to charge, and the charge as given.

No question arises upon the pleadings.    The evidence on the part of the claimant tended to show, that Samuel P. Durham, the deceased, was an uncle of claimant, and resided, during all the time while the material occurrences to which the evidence relates, in the town of Harmony, Chautauqua county, New York, where he continued to reside until the fall of the year 1865, when he removed to Lenawee county, Michigan, where he died in the summer of 1872; that while claimant was but a child, his father died, leaving claimant and his brother Edgar, some two years older, and their mother, in comparatively poor circumstances; that when Edgar was about seven years old, and afterwards, when claimant was about fourteen, the deceased took them respectively into his family, treating them as if they were his children,—he having no children of his own,—and they treating him as a father, until they respectively became of age; which, in claimant's case, was about the year 1852; that claimant was, during all the time, temperate and industrious, and that his labor was worth more than his support, and the little schooling furnished him, by four hundred dollars; that his clothing was cheap, and he received but little schooling; that shortly after

---

*This statement of the case was prepared by Judge Christiancy.

becoming of age, claimant married, and about the year 1853, with his wife, went to live on a farm (in Harmony) then owned and occupied by deceased, which claimant seems to have worked upon shares, for from one to three years; deceased, during the first part of this time, residing on the same farm, and giving some assistance in improving and cultivating it, and then moving away, leaving claimant on the farm, which most of the evidence tends to show he worked as a tenant of deceased, paying him rent; but some of the evidence tends to show he worked for a part of the time on shares; that after having worked the farm in this way for a while, perhaps two or three years, some arrangement or agreement was made between them by which claimant was to purchase the farm at thirty dollars per acre. But for some reason not very clearly explained, and not material to the case, this arrangement or contract seems to have been abandoned, and claimant continued to occupy it as a tenant, as most of the evidence tended to show, though some evidence on the part of defendants tends slightly to show that he occupied it for some part of the time as a purchaser under the above contract.

There was also evidence tending to show that claimant, while thus on the farm, and between the time when he went on in 1853 and March 2d, 1865, when he purchased it, put valuable and permanent improvements upon it by clearing it up, getting out stumps, erecting new buildings and repairing the old, setting out an orchard, etc., adding in this way about one thousand dollars to the value of the farm; that deceased encouraged him to make said improvements (though there was evidence on the part of defendants that many of these improvements were made or paid for by deceased); that while claimant and his brother were living with and working for deceased, the latter, to encourage them to labor and be industrious, frequently told them that after his death his whole estate should be divided between them, and he had expressed to others the same intention in their

favor; and that he also said to other persons, that if claimant made improvements on the farm they would lose nothing, for he and Edgar were to have all his property when he was done with it; that after the brother Edgar became of age, deceased paid him one thousand dollars for his services, telling him at the time he should pay claimant the same amount, and then they could wait for the balance until he was done with the property; that prior to the execution of the paper executed by deceased and his wife, and given to claimant (a copy of which is given below), claimant became dissatisfied and uneasy because he had nothing to show for his work.   He was afraid Durham might die, and he would get nothing for his improvements, and in consequence of this, deceased drew up and gave to claimant at the time of its date, a writing, of which the following is a copy, viz.:

"June 1st, 1858.

"This is to certify that I do agree to let Orson Keith have a claim on the farm he now occupies, or the amount of one thousand dollars, if I should die before I made a will.

"S. P. Durham,
"Prudence Durham."

There was also evidence tending to show that after this the deceased, on several occasions, told other persons, his neighbors, that claimant had worked faithfully for him, and he had given him his obligation in writing, for one thousand dollars (some of the witnesses say for improvements; others do not mention this, but rather imply that it was for services); and that in case claimant should purchase the farm, he intended to allow one thousand dollars on the purchase; and if not so applied it was to be paid out of his property when he was done with it.

Claimant continued in the possession of the farm until March 2d, 1865, when it was deeded to him by deceased.

The evidence on the part of the claimant is direct, clear and positive, that this one thousand dollars, mentioned

in the agreement above copied, was not allowed to claimant as part of the purchase money, deceased refusing so to allow it on the purchase, but saying in substance, that he must wait for that until he, deceased, was done with the property. The evidence on the part of the defense tended to show that the one thousand dollars was allowed on the purchase, as part of the price.

It was admitted on the trial that deceased died intestate.

The points raised are sufficiently indicated in the opinion.

*Howell & Watts*, and *Walker & Weaver*, for plaintiffs in error.

*A. L. Millard*, for defendant in error.

CHRISTIANCY, J.

It will be necessary to notice separately many of the exceptions and assignments of error in this case, in detail.

The court, at the request of counsel for the claimant, charged the jury:

"1. If the jury find that the plaintiff rendered valuable services for the deceased, either before or after he was of age, under an understanding between them that he was to be compensated therefor in some way by a provision in the will of deceased, or otherwise, even if the understanding as to the mode of compensation at the time the services were rendered was not definite, if afterwards this written agreement was made in order to secure payment for the same to the plaintiff, then the consideration would be sufficient, and the agreement would be binding.

"2. If the jury find that the services rendered by the plaintiff, either before or after he became of age, or both, were rendered under an agreement and understanding between him and the deceased, that they were to be paid for out of the estate of said deceased, after his death, such

agreement would be binding upon the estate, and would not be barred by the statute of limitations.

"3. If the jury find that the deceased, at the time he sold and deeded the farm to the plaintiff, refused to give him a claim on the farm, or to allow him any thing on the purchase on account of the written agreement, then the agreement would, by its terms, be an obligation for the payment of one thousand dollars to the plaintiff out of his estate after his death.

"4. If the jury find that the services rendered, and the improvements made, by the plaintiff were valuable, and that there was an understanding between the deceased and him during the time they were being rendered and made, that he was to be compensated therefor by a provision in the will of the deceased to the amount thereof or more, and if subsequently it was agreed between the parties that this written agreement should be given in order to secure the plaintiff payment for the same in case it should happen that the deceased should die without making a will, and the written agreement was made for that purpose, then the consideration was sufficient, and the agreement would be binding on the deceased."

The court also charged upon his own motion, that, "if Durham, on account of this agreement, sold the farm to Keith for less than he (Durham) considered it worth, or deducted any thing from the price, and Keith accepted the conveyance in satisfaction of the writing, and as payment of the one thousand dollars, the agreement was fulfilled, and Keith cannot recover."

These charges were, so far as they went, I think, entirely correct and fair, and warranted by the evidence in the case. And this sufficiently disposes of all questions touching the true construction of the written agreement. The requests of the defendant upon this point were erroneous and properly refused. But the charges above given did not exhaust all the hypotheses or *states* of fact which

the jury might find from the evidence; and the defendants were entitled to have specific charges upon the law applicable to each of the hypotheses or combinations of facts which the jury from the evidence might legitimately find; and several of the charges requested by the defendants are of this character.

*First,* as to the statute of limitations: defendants' first request to charge was, that "if the jury find that the deceased resided in this state for the period of six years next preceding his death, then all claims of said Keith for services, labor or improvements, which arose against Durham more than six years before his death, and since the making and delivery of the written agreement of 1858, are outlawed, and said Keith cannot recover for them."

The court granted this request with the following addition or modification: "Unless Durham expressly promised that Keith should be paid for them after his death, out of his estate. If he did so promise, then Keith can recover."

The court was right in holding, as a legal proposition, that if Durham expressly promised that Keith should be paid after his death, this promise would not be within the statute, either of frauds or of limitations, so far as this case was concerned; but the objection here is, that this modification of the charge assumed that there was evidence from which an express promise might be found, to pay for services, labor or improvements done or made, between the making of the written agreement in 1858 and the six years prior to Durham's death, which would be the summer of 1866; and it is insisted there was no such evidence. As to services or labor, aside from improvements, I have been unable to find any evidence tending to show any such promise.

But the proposition, to which this modification was attached, was in the disjunctive; and it cannot be said that there is no evidence tending to show an express promise of the kind mentioned, as applied to improvements made upon the farm. A request to charge put in this form must be

correct throughout, or the court may refuse the whole. The evidence is indefinite as to the time when these were made, and when the promises or encouragements to make them were given. The evidence upon these points applies to the whole period between the time Keith went on the farm and March 2d, 1865, when he purchased it; and it does not appear how much of it relates to the period prior, or how much subsequent, to the written agreement. This objection, therefore, to this particular modification, is not well founded.

But the court did charge as requested (request No. 2), that " unless said written agreement was given to Keith in consideration of, or to secure the payment to him for, labor performed and improvements made by him for Durham before that time, then all claims of said Keith for labor performed, and improvements made, before the giving of the writing, are outlawed, and Keith cannot recover for them."

As to the consideration for the written or any parol agreement of the deceased, the court was further requested (3d) to charge, that "Keith cannot recover upon said written agreement for any services, labor or improvements, made or performed by him, since the making and delivery of said written agreement."

This was given with the following modification, which was excepted to, viz.: " unless you find said services were a part of the consideration of said written agreement; if you so find, he can recover." Here the court evidently uses the term services in a collective sense, including the " services, labor and improvements " mentioned in the request. Now, so far as relates to the improvements, as already noticed, the time when these were severally made, and when the promises, encouragements or inducements to make them were made or held out, seems by the evidence to be little if any more definite than that it was between the time Keith went on the farm, in 1852 or 1853, and March, 1865; and it was just as competent for the jury to find part of this after, as before the written agreement. If any

of them were after, I am not prepared to say that, when the whole evidence is taken into consideration, none of it had any tendency to show that the written agreement was not given in contemplation of future, as well as of past improvements. The tendency of the evidence to show this may be slight, but I am inclined to think it had some tendency of this kind.   If improvements were made after the writing, on the faith of compensation to be made from the estate, then, though defendant in error did not at the time agree to make them, still, when he did do so, on the faith of such inducement or understanding, the estate would be bound to pay.   I cannot, therefore, say that it assumed there was evidence in the case which was not in it, as claimed by plaintiff in error.

But the 4th request was, that "Keith cannot recover upon said writing, unless there was a good and valid consideration therefor, existing at the time said writing was made."   To this the court added this modification: "But a promise on the part of Keith to render services after said writing had been made, would be a good and valid consideration therefor if said services were rendered as agreed."   It is objected that there was no evidence tending to show any such promise on the part of Keith.   For myself, I am inclined to think this objection well founded; but my brethren take a different view, and think the circumstances shown would authorize the inference that both parties acted upon the understanding that such services would continue to be rendered by Keith, and that this would be equivalent to a promise; and it cannot be denied that there is some force in this view of the case.

The fifth request was in substance, that though Keith during his minority may have performed labor for Durham, or may afterwards have put improvements on his farm, yet, unless Durham, at the time of making said written agreement, was under legal obligation to pay for such labor and improvements, they would form no valid or sufficient consideration for the agreement.   This the court

gave; but, for the purpose of explaining the phrase "legal obligation," read the second request of the plaintiffs, adopting it as a modification of this request of defendants. I see no objection to this modification. If the services or improvements were performed or made under an agreement, or with the understanding, that they should be paid for, then Durham, after they had been performed or made, would be under the legal obligation insisted upon.

The court charged, in answer to defendant's 6th request, that "if the jury find that Durham received Keith as a child into his family, and that Keith continued during his minority, to reside in Durham's family, as one of his children, and as a member of his family, they treating each other as parent and child, Durham maintaining and supporting him as his child, and Keith laboring for Durham as a son, and without any agreement that Durham should pay him, or that Durham should be paid for his support and maintenance, then Keith would not be entitled to recover for such labor and services, performed during his minority, and while he lived with Durham as a member of his family." And the 23d request (which see below *) was similar and was also granted.

The court was requested to charge (7th): "Nor would such services and labor performed by Keith, during his minority, form any sufficient consideration for said written agreement, made after Keith became of age, or enable him to recover in this suit."

To this request the court very properly (for a like reason as stated for the modification of the 5th request,) added: "If there was no agreement or understanding during Keith's minority, and when he rendered the serv-

---

* "23. If the jury find that Durham took Keith into his family when a child, schooled, supported and clothed him until he became of age, without any express contract to pay him for such services as Keith may have rendered during his minority, and without any agreement to be paid for his support, then Durham stood in the place of a parent to said Keith, and the same law would apply as between parent and child."

ices, that he should be paid or compensated after he became of age."

‡The 8th, 15th, 16th and 17th requests (which see below *) which asked unqualified charges upon substantially the same point, were properly refused, for the reason that the whole substance of them had been already properly submitted by the charges in answer to the 5th and 7th requests, and for the further reason, that the 8th and 15th requests erroneously make Durham's legal obligation to pay for the services depend upon Keith's right to sustain a suit for them on coming of age; whereas, if it was to be paid after the death of Durham, it could not be recovered until that event. The 9th and 10th requests were (9th): "After the death of Keith's father, his mother became entitled to his labor and services during his minority; and if Durham was under any obligation to pay any thing for Keith's labor, over and above his support, the mother, and not Keith, had the right to collect pay, unless Keith shows by the proof

---

* "8. Unless Durham was under such obligation as would enable Keith, on coming of age, to sue and recover pay of him for his services and labor performed during his minority, such services and labor would not form a sufficient consideration for said written agreement afterwards made, or enable Keith to recover thereon in this suit.

"15. If, when Keith became of age, Durham was under no legal obligations to pay him for services rendered while he was a minor, or if while Keith occupied the farm he made improvements, but without any such agreement with Durham as would make him liable to pay for them, Durham would not, by afterwards making the writing claimed upon in this case, make himself liable to pay for the services or improvements, because services and improvements, for which he was under no legal obligation to pay, would not be a sufficient consideration for the agreement, so as to enable Keith to recover thereon.

"16. Although Durham may, while Orson occupied the land as a tenant or purchaser, have encouraged him to industry and to make useful improvements, yet Durham would not be liable to pay for such improvements, unless they were made upon the agreement or understanding with Durham, that he should pay for them.

"17. Statements or expressions by Durham to Keith, of an intention to make provision for Keith in his will, or out of his property after his death, or to give Keith a portion of his property after his death, would not give Keith any cause of action or right to recover in this suit against the estate, for services rendered by Keith during his minority, or for improvements made on the farm while he occupied it as a tenant or purchaser."

that his mother had given up and relinquished to him her right to such payment;" and (10th): "Services rendered by Keith to Durham, and for which his mother had *the right to collect pay, would not form a sufficient consideration for* the said written agreement, or enable Keith to recover thereon in this case."

These were refused, and I think properly refused. Nothing appearing to the contrary, after so long a period, during which claimant and his brother lived with Durham as a part of his family, he standing in *loco parentis*, and they in position of his children, the mother must be presumed to have assented to the arrangement, whatever it was, and to their emancipation from her parental control or rights, whatever these might otherwise have been.

The court properly charged the eleventh and twelfth requests, that "if Keith occupied the farm as tenant of Durham, he could not recover for any improvements made by him for his own convenience and benefit while he occupied the land, unless they were made under an agreement with Durham, that he should be paid for them." And (12th): "The fact that Durham knew that Keith, while occupying the land as his tenant, was making improvements for his own convenience, would not render Durham liable to pay for them." But the court gave the twelfth request with the following modification: "Unless Durham promised to pay for them;" and this is claimed as error. Construing this modification in the abstract, with reference to the requests only, it would seem to assert that though the improvements were made only for claimant's own benefit, a promise made at the time or before to pay for them would be valid, though the improvements should be of no value or benefit to Durham as owner. This, as an abstract proposition, could not be supported, as there would be no consideration for such a promise.

But these requests and the modification must be understood, not in the abstract, but with reference to the kind of improvements made as shown by the evidence; most, if

not all of which, were of a permanent kind, which were shown to have given an additional value to the land; and the purchase was made by claimant after those improvements were made; and there was evidence to show that this increased value formed part of the price. I cannot, therefore, say that the charge upon this point was erroneous, though it is not so clear as it might have been made; and if understood as referring only to a promise after such improvements were made, it would have been clearly erroneous; but taking the whole charge together, I think this could hardly be said to have been the judge's meaning.

There was no error in refusing the thirteenth request (which see below\*), the substance of which had been sufficiently covered and submitted by the charges in answer to the fifth, eleventh and twelfth requests.

The fourteenth request was, that "if Keith occupied the farm as a purchaser under an agreement or contract to purchase, and while so occupying it made valuable improvements without any agreement with Durham at the time that he should be paid for those improvements, and afterwards forfeited the contract, or gave up the farm, he could not recover pay for those improvements." This was granted only with the following modification: "Unless it was agreed at the time he gave up the farm, that he was to have pay for his improvements." If by this the judge meant, as he probably did, to say that if the pay for the improvements was a part of the arrangement or agreement, or one of the conditions upon which he gave up the farm, or rather the purchase, the proposition is correct in law; for in that case there would be a sufficient consideration for the promise

---

\* "13. If Keith made improvements on the land while he occupied it as a tenant, but without any agreement or understanding with Durham at the time the improvements were made that he should be paid for them, he could not afterwards require Durham to pay for them, and such improvements, made without any obligation on Durham's part to pay for them, would not be a sufficient consideration for Durham's afterwards making the said written agreement, or enable Keith to recover thereon in this suit."

of Durham to pay. But this idea is not very clearly expressed, though I am inclined to think, taken in connection with the other charges in the case, the jury must so have understood it; and I cannot, therefore, say it was erroneous.

For the reason stated at the commencement of this opinion, the eighteenth, nineteenth, twentieth and twenty-first (which see below*) requests, relating to the construction and effect of the written agreement, were properly refused.

The twenty-second request was, " if said written agreement was intended as a gift, or a promise to make a gift to Keith of an interest in the farm, or of one thousand dollars out of the estate of said Durham" [and not for services rendered by Keith for Durham], "then there is no sufficient consideration for the promise, and Keith cannot recover upon said writing." It is alleged as error that the court modified the request by inserting the words enclosed in brackets. I think this addition was a very proper one to prevent misapprehension by the jury of the true principle of law involved.

The twenty-fourth request was, that " there is no evidence

---

* "18. The agreement claimed upon in this suit does not require Durham to give Keith a claim to the amount of one thousand dollars on the farm, but leaves it optional with him as to how large or how small a claim he will let Keith have. Therefore if Durham on account of this agreement sold the farm to Keith for less than he (Durham) considered it worth, or deducted any thing from the price, and Keith accepted the conveyance, the agreement was fulfilled and Keith cannot recover.

"19. The written agreement claimed upon left it optional with Durham as to whether he would give Keith any thing under the contract or not. It did not require him to give Keith any lien or claim on the farm, and it did not require him to give Keith one thousand dollars, or any sum, by will, or to leave any estate to him.

"20. Said written agreement left Durham at liberty to refuse to give Keith any claim or interest in the farm. It also left him at liberty to make a will to give all his property to whomsoever he chose, and thereby to discharge himself and his estate from all obligation under the contract.

"21. Said written agreement is no more than a promise to make a gift to Keith, and therefore imposes no legal obligation upon Durham, or on his estate, and Keith cannot recover thereon in this suit."

in this case of any promise within six years before the death of said Durham, to pay said Keith for services or improvements; and therefore he cannot recover in this suit, unless he recovers upon the writing; unless he recovers upon the writing, he cannot recover at all." This request was properly refused for two reasons at least: *first*, the statute applicable to the case supposed does not fix the period of limitation for any case at six years, but six years and thirty days.—*Comp. L., 1871,* § *7157.* But *second*, if the writing were out of the case, or the jury should find against it, still, a promise that Keith should be paid out of the estate after the death of Durham, for the improvements in question, would not come within the statute of frauds, because at the time it was made it was possible to be performed within a year, and the statute of limitation would not begin to run until the time for performance arrived, which was not until Durham's death.

The court, as already indicated, properly refused to charge, that "the writing of 1858 imposed no legal obligation upon Durham or his estate, and Keith cannot recover upon it," as requested by the twenty-fifth request.

The twenty-sixth and last request was, that "there is no evidence tending to show that the writing sued on, was given in consideration of services to be performed after its date by said Keith for said Durham; and there is no evidence tending to show that Keith promised, when said writing was made, that he would thereafter render any services for said Durham."

This entire charge was refused. It contains two distinct propositions. The first, as already intimated when speaking of the third request of the defendants, was properly refused; the second (that there was no evidence tending to show such promise by Keith) should, I am inclined to think, have been given; and though contained with the former, under request numbered twenty-six, is as entirely an independent and distinct and additional request, as if it had stood alone, and should, I am inclined to think, be so

treated, and as erroneously refused. But we need not decide this, since the same point was properly raised upon the modification of the fourth request.

This disposes of the entire charge. But exception was taken to the exclusion by the court of the following question put by the defendants to Mary Sword, on her cross-examination: "State whether Mrs. Wood, or your mother, seemed to pay any attention to the conversation going on between Horatio and claimant?" Horatio (N. Sword), one of the defendants, had testified to certain admissions, and statements made by claimant, at the house of James Sword, in Adrian, on a certain occasion when Mrs. Wood and the witness's mother and sister were present; which, if true, were very material and damaging to claimant's case. The claimant, to rebut this, had called Mrs. Wood, who had testified that she was present and heard all the conversation between said Horatio and claimant, of which she professed to give a full detail, contradicting the testimony of said Horatio directly and emphatically in all material points.

In reply to this, the defendants introduced Mary Sword, who testified to being present on the occasion of the conversation, the purport of which was in dispute, and in the same room; but that she did not give any attention to the conversation.

The question ruled out by the court was then put to her by the defense, viz.: whether Mrs. Wood and the witness's mother paid any attention to the conversation. It seems to me this question ought to have been allowed. But my brethren think it was not sufficiently direct in its tendency to bring out any facts calculated to discredit the testimony of Mrs. Wood, to render its rejection erroneous.

After both parties had rested, and had presented their requests to charge, and while their counsel were arguing these requests to the court, and before commencing the argument to the jury, counsel for defendants stated to the court, that since the closing of the proofs and the com-

mencement of the argument upon the requests, they had heard for the first time that in 1865, subsequent to the deed to claimant, the deceased had made a will, then in possession of Mrs. Janett Taft, eight miles from Adrian, which had never been probated; and they then undertook to withdraw the admission made on the trial, that deceased died without making a will, and asked leave to prove the will, etc. This the court refused, and defendants excepted. At best, if the court, after the admission had been deliberately made on the trial, could, in that stage of the case, have allowed proof of such a will, it was matter of discretion, upon which error could not be assigned. But looking at all the circumstances of the case as they appear upon the record, I think the court exercised his discretion wisely in refusing the offer.

The result is, that, in the opinion of this court, there is no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.