# John C. Mundy v. Leonard Foster and others.

*Proofs: Allegations: Agreement to make a will.* The proofs in this case are held insufficient to establish the case made by the bill, which was in substance that complainant, being the owner of certain premises in Ann Arbor, conveyed them to his wife in consideration of, and in reliance upon, an oral agreement that she should execute a will leaving all her estate to him; that she executed such will in pursuance of such agreement, and the same by his 'consent was left in her possession; and that afterwards she destroyed the will, and in fraud of such agreement executed a trust deed, which disposed of the property in a manner at variance with the terms of the agreement; and the bill prayed that the trust deed might be declared void, that the provisions of the will might be declared in force and be specifically performed, and that the trustees and beneficiaries be decreed to release their rights to complainant.

*Bill in equity: Inconsistency: Agreement to make a will: Trust deed.* A bill which seeks to have a trust deed cancelled as void, in that it is in violation of a prior agreement to execute a will making a different disposition of the property deeded, and therefore fraudulent, and which expressly avers the invalidity of the deed, where the case has been prosecuted and decided on this theory, is held not impeachable for inconsistency, though some of its averments seem to have been framed on the theory of calling the trustees to account for dereliction of duty, and so of affirming the trust and demanding its execution.

*Parol contract: Turning point of case: Evidence.* Upon the facts alleged in this case, the complainant's whole claim for relief depends upon the parol agreement set up between himself and his wife, and if his proofs fail to establish that, his whole case utterly fails, and all other points, either of fact or of law, become unimportant.

*Title to lands: Parol arrangement: Proofs.* Such an oral arrangement, in order to be enforced to establish rights in lands at variance with the muniments of title, must be clearly and satisfactorily proved by testimony that is above suspicion; and the agreement set up in this case is not thus proved by the evidence.

*Evidence: Inconsistent acts.* The fact that complainant, after his wife's death, with full knowledge of all the facts, for a year and a half received and accepted from the trustees the maintenance provided by said deed to be paid to him, is inconsistent with the claim set up in this bill, that to his knowledge the whole property then belonged to him in virtue of the agreement his wife had made with him, and that the trust was therefore entirely invalid; and it tends strongly to negative the existence of the supposed agreement, especially where the evidence to establish it is in itself weak.

*Witnesses: Agreement to make a will: Surviving party to transaction: Matters equally in the knowledge of the deceased.* A complainant who is asserting his right, on the strength of an alleged oral agreement made privately between himself and his wife, to overturn her conveyance to trustees, and on the same reason to be recognized as executor, legatee and devisee under the will he claims she made and destroyed, is, when he assumes to testify to such oral agreement, if not literally within the terms, clearly within the policy of the statute (*Comp. L. 1871,* § *5968*) precluding a surviving party to a transaction from testifying to matters equally within the knowledge of the deceased.

31 MICH.—40.

MUNDY *v.* FOSTER.

*Evidence: Parol agreement: Certainty: Definiteness.* The testimony of the complainant, who is deeply interested in sustaining his case, and who acknowledges to an infirm memory, and whose statements about the matter are not entirely accordant, and who is wholly unable to fix the date, by day, month or year, and does not describe or define the occasion, is not up to the requirements of evidence to establish such an oral agreement as is set up as the foundation for the relief sought in this case.

*Evidence: Proof of oral agreement: Certainty: Definiteness.* Nor is the testimony of a witness, simply to her recollection of the substance of a casual conversation, on the occasion of a visit from complainant's wife, somewhere from ten to thirteen years before, when she and witness were alone, in which she admitted the making of an agreement of such import,—where the witness does not pretend to remember the words, and is unable to give the season of the year, or to fix the date within two or three years, or to identify the occasion or distinguish the visit from many others, and when she admits she felt no interest in it at the time, as it did not concern her,—very convincing as to the existence in fact of such agreement.

*Heard January 21.    Decided February 26.*

Appeal in Chancery from Washtenaw Circuit.

*Lawrence & Frazer,* for complainant.

*E. Thatcher, Felch & Grant* and *H. J. Beakes,* for defendants.

GRAVES, CH. J.

Without attempting to summarize all the facts set forth in the bill, some of the leading features will be mentioned. In 1837 the complainant intermarried with Minerva E. Rumsey, daughter of Henry Rumsey. They resided at Ann Arbor, and complainant and his wife lived together until her death, which occurred on the 26th of April, 1871. Her only heirs at law, as the bill states, were Melville L. and Avery B. Rumsey, sons of her deceased brother, Julius C. Rumsey.

In 1854, as is claimed, complainant owned lots nine and twelve, in block three south of range nine east, in Ann Arbor, and proceeded to erect a brick dwelling upon them, which was completed in about two years; that the premises owed their chief value to the building, and that such value was about six thousand dollars; that whilst the

construction of the building was going on, Henry Rumsey, father of complainant's wife, gave her about one thousand dollars, and that complainant expended it on the building; that Mr. Rumsey desired that this money given to his daughter should be in some way secured to her, and that complainant, conforming to this desire, first proposed to give her a mortgage on the property, but finally it was agreed between complainant and his wife, that he should convey the entire estate to her, and that she should make her will giving to complainant all her real and personal estate; that pursuant to, and in execution of this arrangement, on the 21st of July, 1854, complainant and his wife deeded the property to Barron Mundy, the father of complainant, and that the latter, by deed dated August 2d, 1854, but not acknowledged until February 26th, 1856, conveyed to complainant's wife, and that both deeds were recorded on the 8th of March, 1856; that complainant's wife, in order to carry out the agreement on her part, and in consideration of the conveyance so made to her, and on or about the time of the delivery of the last named deed, executed her will, and by the terms of it, after providing for the payment of her debts out of her personal estate, gave the rest of her personalty, and all the real property of which she might die seized, to complainant in fee simple; that complainant endorsed his assent, and his wife thereupon retained the will until about the 20th of June, 1862. The complainant alleges that at that time, without his knowledge or consent, and contrary to the before-mentioned agreement, and with intent to defraud him, his wife, as he is informed and believes, destroyed said will, and executed and delivered a trust deed of the property in question. The bill then proceeds to set forth the terms of this deed, with the names of the trustees and beneficiaries. They are all named as defendants. The property was to be held for Mrs. Mundy's benefit during her life, and provision was made for the payment of her debts, the expenses of her funeral, and the cost of a suitable monument to be placed at her grave.

Provision was also made to afford complainant, during his life, decent, comfortable and suitable support, with such aid as he ought reasonably to render; to pay the expense of his last sickness and funeral, and the necessary expense required in taking care of the property, and keeping it insured. It was further provided that the trustees should have a reasonable compensation for their services. The particular trust being executed, the deed declared that the trust should cease, and that the religious society named as defendant should have the remainder as a parsonage, on certain conditions for keeping the property in order, and lastly, that the school district mentioned as defendants should have the reversion.

The complainant further alleges that in 1871 he owned two lots adjoining the two deeded to his wife, and that he and his wife, in March of that year, joined in a deed to one Smith, by which they conveyed to the latter a part of one of complainant's lots, and a part of one of his wife's lots, for one thousand five hundred dollars; that three hundred dollars of this purchase price was paid down, and the balance, being one thousand two hundred dollars, was secured by bond and mortgage to be paid at a future day; that complainant, being ignorant of the destruction of the will, and the execution of the trust deed, consented that the bond and mortgage should run to his wife, which was done. And complainant alleges that his wife, in keeping from him the destruction of the will and the execution of the trust deed when this bond and mortgage were made to her, committed a fraud upon him, and he insists that these securities belong in equity to him.

The trustees having caused the building to be insured, and it having subsequently been wholly or mostly destroyed by fire, the complainant makes charges against the trustees concerning their settlement of the loss, and also charges them with neglect in not restoring the property.

The particular relief sought is, that the trust deed may be declared void; that the provisions of the will may be

declared in force, and be specifically performed; that the trustees be required to surrender to complainant the property received by them under the deed, including the bond and mortgage given by Smith, and be required to pay over to complainant whatever amounts they have received on such securities; and finally, that the trustees, and the religious society and school-district, be compelled to relinquish and convey to complainant all their right under the deed.

The defendants answered, and among other things denied all fraud, and denied the making any agreement between complainant and his wife as set up in the bill. The defendants also claimed that complainant had recognized the validity of the trust deed, and of the trust, and had applied to the trustees for, and received from them, pecuniary assistance, pursuant to the trusts specified in the deed. And besides other matters of defense not necessary to be repeated, it was insisted that the bill did not make a case for equitable relief.

Replications having been filed, proofs were taken, and on final hearing the court, passing on the merits, decreed the particular relief prayed by complainant, and defendants appealed.

The foregoing statement shows the nature of the case, and the real basis of complainant's present demand for equitable redress. There may be room for contending that the bill is not upon its face quite consistent, but this circumstance is of no practical moment. It was not its object to affirm the trust, and thereupon insist upon its execution, or call the trustees to account for dereliction of duty, although some features would seem to have been framed upon that theory. On the contrary, it is expressly averred that the trust deed was and is wholly void, and this is alleged to be owing to the force and effect of the supposed partly executed agreement between complainant and his wife. The supposed irrevocable nature of the will is claimed to have been caused by this agreement, and the purpose of complainant is, to enforce the early transactions

embracing the agreement and will, and overthrow the later and repugnant disposition depending on the trust deed. The prayer for relief proceeded on this ground, and the record shows that the case has been prosecuted and decided on the same theory. That the construction thus placed on the bill was the proper one, I have no doubt.

Adhering to this view it is at once apparent, that whatever claim complainant can set up for relief in the case, as constituted, necessarily depends upon the alleged agreement between himself and his late wife, and whatever might be the event under legal rules if that agreement were established, it is clear that unless as matter of fact such an agreement was made, his present claim is without any foundation. As his wife was confessedly the holder of the property, she was entitled to deal with it, and dispose of it in any lawful manner, unless her holding or power of disposal was hampered by some valid arrangement, and no other arrangement is pretended except the before-mentioned agreement.

Unless, then, the complainant has succeeded in proving as matter of fact the existence of that agreement, unless it has been satisfactorily shown that the alleged arrangement actually occurred between himself and his late wife, his whole case utterly fails, and all other points, either of fact or law, become unimportant.

If there was no such agreement, or what is the same thing so far as this litigation is concerned, if the proof is not satisfactory to establish it, then all controversy about the execution of the will, its revocation, and the right to revoke it, is at once fruitless and immaterial.

Now, on turning to the evidence, it will be seen, that if such an agreement as is set up was ever entered into at all between complainant and his wife, it was not in writing, but verbal, and made without witnesses, and when the parties were alone together; and that the proof of it depends upon the testimony given by complainant in his own behalf, and the testimony of his brother's wife. As

connected with so much of his testimony as goes to show that his wife was under a binding agreement to leave all her property to him absolutely, that this agreement was of many years' standing, that she informed him the day before her death that she had violated her agreement, and had made the trust deed and regretted it, it is material to notice his attitude towards the trustees and the trust for many months immediately succeeding his wife's death. When she died he was fully aware of all the-facts. He knew then, as well as he knows now, the actual state of things. Nevertheless, the record shows beyond question, that for more than a year and a half at least, subsequent to his wife's death, he called for and received means from the trustees in virtue of the trust declared by the deed. We find that as late. as the 16th of September, 1872, he receipted over his own hand to the trustees, the sum of one hundred dollars, " to apply on maintenance account."

To say the least, it is difficult to reconcile this action of complainant with the claim now set up: that to his knowledge the whole property belonged to him in consequence of the agreement his wife had made with him, and that on the same ground the trust was entirely invalid. It is quite impossible to withhold from this circumstance any and all influence upon the question whether, in point of fact, there was or was not such an agreement as is now asserted. On the contrary, as matter of evidence, it tends strongly to negative. the existence of the supposed agreement, and more especially when we reflect upon the nature of the evidence to establish the agreement.

Passing this circumstance, we come to the testimony given by complainant to make out this vital part of his case. He assumes to swear that an agreement was in fact made, but he is wholly unable to fix the date of it. He cannot give the day, the month, or even the year. He does not describe or define the occasion, and his statements about the matter are not entirely accordant.

Indeed his testimony, if competent, is open to much criticism. His memory of antecedent and contemporary events, and even of later circumstances of importance, appears to be very unfaithful; and considering the remoteness of the event he testifies about, and the manner of his evidence, the untrustworthiness of his memory seriously diminishes the weight of his relation.

But this infirmity of memory is not the only thing to cause hesitation in accepting his representations.

He swears under a very strong bias. He is interested to the extent of the claim he sets up. He is interested to the extent of the costs of the litigation. On the whole, it is not unreasonable to infer, from what appears in the record, that he has dwelt for some time upon the chance there might be to get the property his wife formerly owned, and that, going back with a feeble memory to recall casual conversations held with his wife many years ago in the freedom and privacy of their married life, conversations never intended at the time to constitute any agreement, or be made public, he has at last come to think, under the promptings of interest, that in point of fact an agreement such as he has described was actually entered into.

Upon the best view I am able to take of this testimony, I cannot rest upon it. Aside from its intrinsic weakness on several grounds, it is strongly opposed to any reasonable view of his wife's conduct and motives. He charges that she acted fraudulently towards him when she gave the deed of trust and ignored the contract to will the property to him. The case is, however, clear that he was idle and dissipated, and that his support and the preservation of the estate were almost entirely due to her providence and industry, and the evidence also favors the opinion that whatever remained had come from her father's estate or bounty, and justly belonged to her.

These surrounding facts militate in favor of the disposition she made to the trustees, and against the allegation

that she bound herself to will the property to complainant, and then committed a fraud upon him by a secret and prejudicial disposition.

In view of complainant's attitude as party and witness, there is another point not undeserving of notice.

He is asserting his right, on the strength of the supposed verbal agreement made privately between himself and his wife, to overturn her conveyance to the trustees, and, on the same reason, to be recognized as executor, legatee and devisee under the will he claims she made and destroyed. When he assumed to testify to the verbal agreement, his position, if not literally within the terms of the statute against admitting a surviving party to a transaction to testify in certain cases (*Comp. L. 1871,* § *5968*), was clearly within its policy, and, in my judgment, he was not a proper witness to prove the making of the contract.

It remains to notice his sister-in-law's testimony, introduced to prove the agreement.

Her deposition was taken in June, 1873. She resided in Jackson, and she claimed to remember that, on the occasion of a visit paid her by complainant's wife, from ten to thirteen years before, and being unable to fix the time more definitely, that lady, in a casual conversation when they were alone, informed her that the lots in Ann Arbor occupied by the house and barn had been deeded to her to release them from a mortgage of her husband's father, and that in consideration of the grant she was to will, and had willed, the property to complainant.

The witness did not pretend to remember the words used by Mrs. Mundy, and only assumed to relate the substance, according to her recollection of it, and she observed at the same time that when the statement was made she felt no interest in it, as it did not concern her. She was unable to give the season of the year, or identify the occasion, or distinguish the particular visit from many others paid her by complainant's wife. She could not recollect even, whether the complainant accompanied his wife on this

visit; and concerning the incidents of other visits made, her memory was deficient.

She admitted that for ten or twelve years from 1840, she was not on friendly terms with complainant's wife, but she afterwards observed that she meant by this that she was so situated they could not visit.·

It would be a waste of time to comment at length on this piece of testimony. The veracity of the witness is not questioned; but the force of her evidence, to convict her deceased sister-in-law of a plain fraud, overturn a trust acquiesced in by complainant for more than a year and a half, and shift titles to real estate, may well be doubted. The wife of complainant, could not be called to give her version or make explanation. She could not be produced to refute the witness's recollection or correct any error into which she may have fallen. When we look at all the circumstances, do we feel convinced that the witness correctly heard and understood what her sister-in-law said; that she collected in her memory the true substance, and has preserved it there, notwithstanding she took no interest in it, for from ten to thirteen years? She did not attempt to give any other conversation with her sister-in-law, or the substance of any, and her memory was greatly at fault about every other incident of this visit except the *substance* of the particular conversation. But what she calls the substance of the conversation is her present idea of the result of what, according to her recollection, her deceased sister-in-law told her.

She does not undertake to repeat a single word used by her sister-in-law, and whether or not she is correct in her idea as to the substance, cannot be found out from any thing she states. The chances for her being wrong are great and various. The failure to catch a word, or the misunderstanding of a word, or a slip in getting at the final meaning, would be enough to spoil the effect of the evidence. A faulty recollection in regard to the words uttered, or their connection, might do so.

If any case of this sort can be sustained by verbal proof, the contract should be proved in the clearest manner, and the evidence ought to be above suspicion.— *Wilson v. Wilson, 6 Mich., 9; Wales v. Newbould, 9 Mich., 45, per Christiancy, J.; Hill v. Wilson, L. R., 8 Ch. Ap., 888, 7 Eng., 449; Christmas v. Spink, 15 Ohio (Griswold) R., 600.*

Whatever there is of evidence here, to show the contract alleged between complainant and his wife, falls far short of this, and is wholly insufficient, and I think the case breaks down on this vital point. Having reached this result, it is unnecessary to examine the legal points, or consider how the case would have stood if the verbal agreement had been fully substantiated.

The decree below should be reversed, and the bill dismissed, with the costs of both courts.

CAMPBELL, and COOLEY, JJ., concurred.

CHRISTIANCY, J., did not sit in this case.