## WILCOX *v.* WILCOX.

1. WITNESSES — EXAMINATION — FORM OF QUESTION — HARMLESS ERROR.

> It is not reversible error to overrule an interrogatory to a witness containing two questions where everything material and competent might have been obtained from the witness by other questions.

2. SAME — COMPETENCY — MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

> A claimant against the estate of a decedent for money expended in his behalf may testify as to expenditures about which deceased had no knowledge, but not as to those which he knew about.

3. LIMITATION OF ACTIONS — CLAIM AGAINST ESTATE — HUSBAND AND WIFE — QUESTION FOR JURY.

> A widow, in support of a claim against the estate of her husband, who died in 1902, showed that when they were married in 1892 she had ready money, that he had none, that his farm was mortgaged and the buildings in need of repairs, that he earned no money after marriage, and that their living expenses, the mortgage, repairs to the house, and the expenses of his last sickness and burial were paid by her. He frequently recognized his obligation to her, and recently before his death stated that she should be paid. *Held*, that it was error to direct a verdict for the estate on the ground that limitations had run against items of her claim dated in 1893 and 1894.

Error to Mason; McAlvay, J. Submitted January 7, 1905. (Docket No. 77.) Decided March 21, 1905.

Mary D. Wilcox presented a claim against the estate of Levi Wilcox, deceased, for money loaned during his lifetime. The claim was allowed in part in the probate court, and Frank Wilcox, an heir at law, appealed to the circuit court. There was judgment for contestant on verdict directed by the court, and claimant brings error. Reversed.

*Fitch & Reek* (*James H. Pound*, of counsel), for appellant.

*David Stockdale & Son* (*Wilkes & Stone*, of counsel), for appellee.

MOORE, C. J.   Levi Wilcox died in 1902.   Mary D. Wilcox presented a claim against the estate of her deceased husband, the following items of which were allowed in probate court:

*First.* 1893, to Levi Wilcox, cash, $250.
*Second.* By cash expended, lathing, plastering, papering, chimney built, bedding, linen, silver, and china, etc., paid mortgage and interest, bought farming tools, implements, etc., built barn and double granary, 1894, $875.
*Third.* Expenses connected with final sickness, $132.
*Fourth.* The other item is widow's mourning, $97.

From the allowance of these items an appeal was taken by the son of Mr. Wilcox to the circuit court.   A trial was had before a jury, which returned a verdict, by direction of the trial judge, in favor of the estate.   The claimant brings the case here by writ of error.

The record shows that the claimant, who was then a comparatively young woman, in 1892 married Mr. Wilcox, who was then more than twice as old as she, and not in good health.   She then had upwards of $1,500 in the bank.   He had 80 acres of new land in Mason county, incumbered by a mortgage, with an unfinished house upon the land, and some other small buildings.   Her money was used to make the house habitable, to pay off the mortgage, and for the living expenses of the family.   Mrs. Wilcox claims her money was used with the expectation upon her part it would be repaid to her, and upon Mr. Wilcox's part that he would repay it.   For the purpose of making claimant's case, her sister, Mrs. Hunter, was sworn.   After testifying to the marriage of the parties in 1892, and to the fact that she visited them at their home in 1895, and to some other things, she said:

" *Q.* What did he say as to his condition in regard to money ?

"*A.* He was very sorry he didn't have more. She had so much and he had so little. He said he would pay it back; that he had been so sick; that now he was feeling fine, as fresh as a colt; that he had got a new horse, and was going to begin to work like a young fellow, and pay that back.

" *Q.* How much had he used at that time, if he stated ?

"*A.* About a thousand dollars. He said he was very sorry that it should be so.

" *Q.* He told you he had been sick, and used the money ?

"*A.* Yes, sir; they had no home.

" *Q.* State whether or not he told you anything at that time about what kind of a home he had for your sister when he married her.

"*A.* He told me he had none; a deplorable hole—that is, the condition of his home; no lath, no plaster, no nothing, but that he had begun to build a shell. He said she furnished the money to lath and plaster the house and fix it; get the furniture of every description—everything that was in it.    *    *    *

" *Q.* Did he say.anything what was to be done with the property ? Did he say anything about his family ? (Objected to as immaterial. Sustained. Exception taken.)"

On the cross-examination she said:

" *Q.* You stated that Mr. Wilcox stated to you that he had about $1,000 ?

"*A.* Yes, sir. This conversation was in the afternoon the time I was there.

" *Q.* How long had he had that money, did he say ?

"*A.* They were expending it as they went along. They had never earned a cent.

" *Q.* Did not say so, did he ?

"*A.* He did, but he was going to begin; but he never began yet.

" *Q.* And the $1,000 was entirely used up at the time you made the visit there ?

"*A.* Yes, sir.

" *Q.* Can you tell us where, and for what, it had been used ?

"*A.* Everything that had been done, and their living

for three years, came out of that, and their living still.
\* \* \*

" *Q.* What was furnished there that did not come from the farm—everything ?

"*A.* Sugar, lemons, bananas, and lots of everything they should eat.

" *Q.* What else ?

"*A.* They should buy of the grocery in the neighborhood.

" *Q.* Whose money did he use ?

"*A.* Her own.

" *Q.* Are you sure of that ?

"*A.* Yes, sir.

" *Q.* You were there when she was using her own money?

"*A.* Yes, sir; there was no other to be used.

" *Q.* You know that to be a fact of your own knowledge ?

"*A.* He told me. I never had any conversation with Wilcox after my visit there about money in the summer of 1895."

The condition of the house before the marriage, and statements of Mr. Wilcox that he did not have money at that time to pay his taxes, and the fact that after his marriage the house was put in order and well furnished, was shown by other witnesses. Mr. Shefflers, who rented the farm, testified, among other things:

" I had a talk with him about two weeks before he died. It was when they commenced talking I had the farm from him, and I made a bargain to rent the farm; and when the bargain was made they tell me not to work on Saturday. He tell me she would not like that. He said she paid so much money in the farm, and he like to pay her back so long as he live, and when he died the farm belong to the woman. He did not tell me how much money she had put in farm, but he would like to pay her back what she put in."

On cross-examination:

"*Q.* You say he did not state how much money he had of his wife ?

" *A.* No; he said she put so much out there he wants to pay her back sometime. He said the farm belonged to her when he died. He complained he was sickly."

Mr. Conners testified :

"*Q*. State whether or not you ever had any conversation with Mr. Wilcox relative to any money he intended to pay his wife.

"*A*. Well, we were once working together, and I guess I made the remark that his wife must have had quite a bit of money when he married her, and he made the remark, he said, ' Yes, but I will make it all right with her before I die.' He said he knew that he was a little hard up at the time he married her. That was about two years ago this fall."

Mrs. Wilcox was sworn as a witness. She testified that when she married Mr. Wilcox she had between $1,500 and $1,600. The following then occurred :

" *Mr. Fitch:* I wish to ask now whether it is the intention of counsel to object to proof by this witness as to expenditures during the last sickness.

" *Mr. Stockdale:* Yes, sir.

" *Mr. Fitch:* I make the offer to prove by this witness the amount paid by this witness for medical attendance, nursing, washing, and other incidental expenses connected therewith during the last sickness of the deceased.

" *Mr. Stockdale:* I object on the same grounds. If anything was paid, it was equally within the knowledge of the deceased, and can't be proved by this witness, but is open to proof by any other witnesses who had rendered their services, I should think, but not by any other witness."

The objection was sustained. No witnesses were sworn on the part of the defense. Counsel for defendant claimed there was no proof of items 3 and 4, and that as to items 1 and 2 the statute of limitations had run, and asked the court to direct a verdict in favor of the estate, which was done by the trial judge. The questions will be discussed in the order presented by counsel for claimant.

*First*. Should Mrs. Hunter have been allowed to answer the question: "Did he say anything about what was to be done with the property ? Did he say anything about his family ?" It will be observed there are two questions in the interrogatory. It would have been easy for

counsel by other questions to obtain from the witness any information she had which was material and competent. We do not think the ruling was reversible error.

*Second.* Did the court err in excluding the testimony of Mrs. Wilcox when counsel offered to prove by her the amount paid by this witness for medical attendance, nursing, washing, and other incidental expenses connected therewith during the last sickness of deceased ? If any item of what was proposed to be proved by this witness was within the knowledge of the deceased, she could not testify in relation thereto, because of the statute. If, as to some of the items it was proposed to show by her, the deceased had no knowledge, then she would be a competent witness.

*Third.* The important question in the case is, Was the court right in holding as a matter of law that the statute of limitations had run, and in directing a verdict? This question is discussed by claimants under two heads: *First.* It is asserted the statute does not run against the wife in favor of the husband; *second*, that the statute does not begin to run until a right of action accrues, and whether it had run or not presented a question for the jury—citing *Sword* v. *Keith*, 31 Mich. 247; also note 1 to above case and authorities therein cited; also note 2 in *Mundy* v. *Foster*, 31 Mich. 313; *Winters* v. *De Turk*, 7 L. R. A. 658, and notes (133 Pa. St. 359); *Opp* v. *Wack*, 52 Ark. 288 (5 L. R. A. 743); *Evans* v. *Johnson*, 39 W. Va. 299 (23 L. R. A. 737). An examination of the authorities shows a want of uniformity as to the first of these propositions. In our view of the case, however, it is not necessary to pass upon this question. It must be remembered that the mouths of the parties who know just what the transaction was are closed, Mr. Wilcox's by death, and the claimant's by the statute; so it is difficult to show clearly just what the arrangement was. It does appear, however, by the testimony, that in 1895 the husband, who was poor, had at that date used about $1,000 of his wife's money, and that

the remaining portion of what she had was being daily used to pay the living expenses of the family. It also appears that two years before the trial Mr. Wilcox realized his obligation to repay his wife. It is also shown that he recognized this duty as late as within two weeks of his death. We do not think it would be a fair inference to say that it was expected by this man and his wife that he would at once repay the money he had borrowed from her. On the contrary, such an inference would be unfair, because they both recognized he had nothing with which to make an immediate payment. It is not denied that he had this money. It is equally clear that when he got it he expected to repay it at some future time, and that his wife expected he would. The inference would not be farfetched from the testimony that he expected to repay it during his lifetime if he could earn it, and, if not, that it would be paid from his estate. In any event, we think that presented a question for the jury to pass upon.

Judgment is reversed, and a new trial ordered.

CARPENTER, GRANT, BLAIR, and MONTGOMERY, JJ., concurred.