CLAY LUMBER CO. *v.* HART'S BRANCH COAL CO.

1. GARNISHMENT—NOVATION—BILLS AND NOTES—DEFENSES.

    In garnishment proceedings brought by creditors of a corporation, the principal defendant, against two stockholders who had been indebted to the corporation on their note given for corporate stock, but claimed to have canceled their liability by a novation agreement whereby the corporation agreed to cancel the note in consideration of the garnishees' assuming another note on which the corporation was liable to a bank, with them as indorsers, the court should have submitted to the jury the question presented by testimony tending to support such defense whether a novation had taken place, and whether the defense of payment by satisfying such note as alleged by defendant garnishees had been established.

2. NOVATION—DEBTOR AND CREDITOR—GARNISHMENT.

    If by agreement of garnishees and principal defendant with a bank to which the principal defendant was indebted, the garnishees assumed the indebtedness to the bank, and the principal defendant released them in consideration thereof, so that a new obligation arose to pay the latter debt, due to the bank, the garnishees could not be held liable on their canceled indebtedness to the principal defendant, although neither note had been surrendered at the time the suit was instituted.

3. FRAUD—DEFENSES—GARNISHMENT.

    Garnishees who claim to have been defrauded in their subscription to corporate stock, for which they gave their note to principal defendant, are entitled to present the same defenses to garnishment proceedings as they might interpose against the principal defendant, although they claimed to have made a novation or compromise of their liability by assuming another note of the principal defendant, due to a creditor bank, if it should be determined by the jury, adversely to the claim of the garnishees, that the novation was not established by the evidence.

4. FRAUDS, STATUTE OF—NOVATION—CONTRACTS.

    When a debtor promises his creditor to satisfy a valid indebtedness of the latter by paying a third party to whom it is due, and all three parties assent to the arrangement, the undertaking is not void, although it rests in parol; the statute of

frauds does not affect it, because the promise is not to pay the indebtedness of another, but to assume and pay it as the third party's obligation.

5. CONTRACTS—ACTIONS AGAINST THIRD PARTIES.
An action does not lie on a contract made by a third party for the benefit of the plaintiff.

Error to Macomb; McKay, J. Submitted November 13, 1912. (Docket No. 54.) Decided April 8, 1913.

Garnishment proceedings in justice's court by the Clay Lumber Company against George Steffens and Charles Steffens as garnishee of the Hart's Branch Coal Company, principal defendant. From a judgment for defendants plaintiff appealed to the circuit court. Judgment for plaintiff and said garnishees bring error. Reversed.

*John A. Weeks* and *William J. Dusse,* for appellants.

*William S. Jenney,* for appellee.

STEERE, C. J. The contention in this controversy relates to garnishment proceedings against Charles and George Steffens, the garnishee defendants herein. They were stockholders and directors of the Hart's Branch Coal Company, principal defendants, and are claimed to have been indebted to it. This claim of indebtedness and their denial present the foundation issue.

The action was commenced in justice's court on November 6, 1908, by summons; two writs being simultaneously issued and served on that day, one against the principal defendant, the Hart's Branch Coal Company, in an action in assumpsit, and one against Charles Steffens and George Steffens as garnishee defendants, whose alleged indebtedness to the principal defendant it was sought to reach and hold by garnishment to ultimately satisfy such judgment as might be recovered against the coal company. On January 5, 1909, plaintiff recovered a judgment in said justice's court against the principal defendant for the sum

of $300 and costs, which judgment was not appealed from and now stands undisputed and unquestioned

The issue in the collateral garnishment proceeding was tried in the justice's court before a jury, resulting in a verdict for the defendants, from which the plaintiff appealed to the circuit court of Macomb county, where a retrial by jury, on November 22, 1911, resulted in a verdict and judgment in favor of plaintiff and against said garnishee defendants for $346.13. A motion by said defendants for a new trial was denied, and they have removed the proceeding here for review upon a writ of error.

Out of the numerous assignments of error, the most important questions urged and argued center on the ruling of the court in denying defendants' motion for a directed verdict in their favor, and in excluding testimony offered by them in support of their claim that a certain note for $500, given by them to the coal company in payment for some of its stock, was obtained through fraud and misrepresentation, and void.

The Hart's Branch Coal Company, a West Virginia corporation, was organized to engage in coal mining in that State, and was so engaged for a time, apparently unprofitably, though the full nature and extent of its operations are not disclosed. Its principal officers and stockholders were residents of Macomb county, Mich. The only records of meetings of stockholders and officers of the company put in evidence show that they were held at 48 Macomb street, Mt. Clemens, Mich. The president of the company, A. T. Donaldson, resided at Mt. Clemens, and was also president of the Citizens' Savings Bank of that city. The coal company had an account in, borrowed money of, and did its banking business with, said bank. The garnishee defendants, Charles and George Steffens, father and son, resided at Frazer, in said county, where they were engaged in the lumber and coal business. They carried an account in said Citizens' Savings Bank, in which Charles Steffens, the father, was also a stockholder. They had taken stock in said coal company, at the solicitation and on the rep-

resentation of Donaldson and others who were engaged in its organization, as they claim, and had given in payment on their stock a 90 days' note for $500, dated June 29, 1908, payable to A. T. Donaldson, as president of the Hart's Branch Coal Company, at the Mt. Clemens Citizens' Savings Bank.

On July 25, 1908, the coal company borrowed of said Savings Bank $300, giving its note therefor payable in 60 days, indorsed by the directors of the coal company, including the defendants Charles and George Steffens. The note was given to raise money to pay off certain labor claims in West Virginia against the principal defendant. Defendant George Steffens, then a director, went down to West Virginia with another member of the company and paid certain claims. President Donaldson testifies:

"They got the money and went down and paid all the claims against the company as we supposed. * * * When they came back and found the condition of things, the directors concluded that we wouldn't do much of anything more and did not have money enough, and, if Mr. Steffens took care of that note and the interest, we would surrender the $500 note, and I saw Mr. Steffens and told him what we had decided on, and he said he would think it over. Afterwards he told me that he would take it up and would leave orders at the bank."

Both the Steffenses substantiate this and testify that they accepted the proposition; the agreement being reached as a result of various negotiations arising from their objection to paying the $500 note and their claim of fraud and misrepresentations at the time it was obtained.

It appears undisputed that, in pursuance of the agreement reached, Donaldson, as president of the coal company, delivered the $500 note held by the company against the Steffenses to the cashier of the Citizens' Savings Bank, with instructions that when Mr. Steffens paid the $300 note with interest, which it held against the coal company, the $500 note should be surrendered to Steffens, and that, in pursuance of the same agreement, Charles Steffens went to the bank and told the cashier to charge up the

$300 note and interest to his account; he having at that time, and continuously thereafter, sufficient funds on deposit to cover the same. This occurred in October before commencement of this suit; but the $300 note was not charged to Steffens' account nor the paper surrendered until January 22, 1909, at which time the $300 note was charged to Steffens' account, with full interest figured to that date, canceled as paid on that date, and surrendered to the coal company, and the $500 note was surrendered to Steffens. The reason given by the officers of the bank for not doing this in October, at the time Charles Steffens authorized the cashier to charge the $300 note to his account, is that another note or evidence of indebtedness of the coal company to the bank for $30 was attached to the note Steffens was willing to pay, and it was sought to collect that also. Steffens declined to pay the $30, and the matter was held along in expectation or hope that he might ultimately consent to do so. Of this transaction Charles Steffens testifies:

"I couldn't tell exactly the date, but the company says I should pay that note and that would pay the other, and so I went to the bank, and they pinned another note to it, about $30 I think, and I told them it had nothing to do with that note, and I said I would pay that note but the other I wouldn't. * * * I had money in the bank and I said, 'You can charge me with that note any time.'"

The time the bank selected was January 22, 1909, as stated.

When the proofs were closed, each side moved the court to direct a verdict in its favor, which motions were denied, and the court submitted to the jury, as an issue of fact, the one question of whether the $300 note was paid prior to the commencement of this action on November 6, 1908, saying:

"If you are convinced by a fair preponderance of the evidence that the directions of Charles Steffens to Mr. Behnke, the cashier of the Citizens' Savings Bank, in October, 1908, to charge his account with the payment of

the $300 note and interest, operated as payment of the note in question, your verdict will be for the garnishee defendants, Charles and George Steffens."

The court in similar language stated the converse of the proposition to the effect that, if not so convinced, the verdict should be in plaintiff's favor.

The question of novation does not appear to have been disposed of by the court, as a matter of law, nor submitted to the jury as an issue of fact. It was the theory of the court that the new agreement, by which the defendants assumed payment of the $300 note, eliminated the $500 note, with all questions relating to it and any defense which might otherwise have been raised against it, and that whether or not the $300 note had been paid when this suit was begun was the only issue. It would unquestionably be a controlling issue if decided in the affirmative. If it had not been paid, but by a tripartite agreement between the coal company, the bank, and the garnishee defendants there arose a novation whereby the old debt represented by the $500 note was released by the coal company and replaced by a new obligation to pay the $300 note to the bank, defendants thereafter were not debtors to the coal company and could not be garnisheed for its debts. We are not able to say from the record before us that, on a retrial of the case, there may not fairly arise from the testimony introduced issues of fact on these questions. But should those issues be decided in the negative, and neither a novation nor payment be established, it is manifest defendants could not be held liable on both notes at the same time, under any theory of the case.

The question must necessarily be tested by conditions as they existed on November 6, 1908, at the time the garnishee summons was served on defendants. The two notes were then in the custody of the bank, uncanceled, and not yet surrendered to the makers. The $300 note was, at all times until paid, the property of the bank and payable to it. The $500 note was, at all times until paid, the property of the coal company and payable to it.

It is plaintiff's contention that on November 6, 1908, neither note had been paid, and there had been no contract of novation as to the $300 note belonging to the bank. Had there been a novation, the $500 note would have been paid and the coal company released from all liability on the $300 note, for to constitute a novation the defendants must have assumed this note, and the bank, knowing this, consented to accept them in place of the original debtor and discharged the coal company. But plaintiff further contends that by virtue of the new contract between defendants and the coal company, to which the bank was not a party, and by which defendants agreed to pay the coal company's $300 note held by the bank in consideration of the coal company canceling their $500 note to it, plaintiff can by its garnishment recover from defendants the $300 which they agreed to pay in liquidation of the bank's note, and which up to the time of commencing this suit they had failed to pay; and that, this right of action being based on the new agreement, defendants are precluded from interposing the defense of fraudulent inducement which might have been interposed to an action on their $500 note.

This plaintiff, seeking by garnishment to reach debts owing by the garnishee defendants to the principal defendant, has no different or greater rights than the principal defendant. Conceding, for purposes of the inquiry, that the facts are as claimed by plaintiff, it becomes material to ascertain the significance of such agreement and the rights of the coal company in that connection. Though it might on first impression seem that a contract by defendants to pay a note of the coal company to the bank was a promise to pay the debt of another, and, not being in writing, was void under the statute of frauds, it was in effect and in fact not primarily a promise to pay the debt of another, but a new promise to pay their own debt in a particular way to another. Had the promise been to the bank, the holder of their creditor's note, the statute might apply; but when the promisor, being a debtor, for a valid

consideration, promises his creditor to satisfy his debt by paying some third party nominated by the promisor's creditor, the agreement becomes a new, independent undertaking, and not a collateral promise which would be void if resting in parol. *Green* v. *Brookins*, 23 Mich. 48 (9 Am. Rep. 74). In this case the consideration to the defendants was twofold. They were not only to be credited in full for payment of their $500 note to the coal company, over which there was a controversy, but were to liquidate the note for $300 at the bank upon which they were indorsers.

Though in many jurisdictions such an agreement gives a right of action to the third party, as in this case the bank against the promisor, a contrary doctrine, following the English rule, obtains in this State (*Knights of the Modern Maccabees* v. *Sharp*, 163 Mich. 449, 455 [128 N. W. 786, 33 L. R. A. (N. S.) 780]), and only the coal company would have any rights against defendants under their new agreement. It is not definitely shown at what time defendants were required to perform; but, for the purposes of this inquiry, it may be presumed it was to be forthwith, as the note they were to pay was past due, and it may be assumed they were in default. Their agreement was not to pay the $300, or any other amount, to the coal company, but to the bank in liquidation of a specified note on which they themselves were indorsers and thereby contingently liable for its full value. Can it be said that on such an agreement the coal company could sue and recover for itself from defendants the $300 which by the contract was to be paid to the bank in liquidation of that particular note and leave the note unpaid? If the coal company could not, the plaintiff cannot do so by garnishment. This note was commercial paper upon which both the coal company's and defendants' names appeared, and upon which both were liable. If the defendants defaulted in their agreement to pay it, the coal company could only change the payee in the agreement by itself paying the note and becoming subrogated to the rights of the bank. What it paid to liquidate the note and its necessary costs

and expenses in that connection would be its measure of damages in an action against defendants for breach of the contract, otherwise, if an action would lie at all on the law side of the court, the damages would be nominal.

Plaintiff's counsel say in their brief:

"The only thing certain from the testimony, as to what that agreement provided for, is that the Steffenses were not to be released from their $500 note until the directors of the principal defendant company had been released by the bank from liability as indorsers of its $300 note.   *   *   * Until such release, defendants were liable on the $500 note.   *   *   *"

If, as claimed by plaintiff, the $300 note was not paid when the garnishee summons was served, the agreement to pay it was executory and defendants, not being released from the note, are liable on it to plaintiff in the same manner they were to the coal company at the date of garnishment. The plaintiff takes only that which the coal company could enforce. The right of recovery being based on the $500 note, it is subject to any defense the signers of the note could interpose against the coal company. That the defendants subsequently paid the $300 note is immaterial. That fact does not affect either plaintiff's right to recover on the $500 note or defendants' then existing defenses to the same.

The judgment is therefore reversed, and a new trial granted.

MOORE, MCALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.