TRUMAN HUNT v. JOHN D. STREW.

*Attachment.*

An affidavit for attachment is bad if it states only that the affiant
   believes that the debtor is about to remove his property, and
   does not state that he has any reason to believe it.

An attachment does not bind property sold between its issue and levy.

Where one who buys from an attachment debtor after the attach-
   ment is sued out but before it is actually levied, promises that
   he will pay the attaching creditor's claim, the promise does not
   render the property liable to execution even if it places the
   purchaser under a personal obligation to the debtor; the
   creditor is a stranger to it and cannot take the property.

An obligation not to avoid a valid lien differs from a promise to pay
   a third person a debt that is entirely unsecured; such a prom-
   ise is binding only as between the parties to the agreement.

Error to Kalamazoo.  Submitted Oct. 10.  Decided
October 15.

REPLEVIN.  Plaintiff brings error.

*Edwards & Sherwood* and *George S. Clapp* for plaintiff
in error.  An affidavit for attachment is fatally defective
if it does not state that the affiant has good reason to
believe the facts it contains, *Nicolls v. Lawrence*, 30
Mich., 395; *Wright v. Russell*, 19 Mich., 346; *Saunders
v. Tioga Mfg. Co.*, 27 Mich., 520; *Spear v. Carter*, 1
Mich., 19; *Wight v. Warner*, 1 Doug. (Mich.), 384;
*Clark v. Holmes*, id., 390; Drake on Attachment, § 106.

*May, Buck & Powers* for defendant in error.

CAMPBELL, C. J.  When this case was here, as
reported in 33 Mich., 85, it was in many respects dif-
ferent from the present record, and a statement of the
facts is therefore essential.

This is an action of replevin brought by Hunt to
recover from a constable a billiard table, and certain

balls and tips, levied on under an execution against one Brown, in favor of Kirby & Fanckboner, on the 11th of September, 1872. There had been an attempt to levy on the table, without its cloth and the other articles, and when it was in separate parts, in July, 1872, upon attachment. The attachment was personally served on Brown, who contested the suit, in which judgment was recovered against him September 10 for about $25 including costs.

Hunt claimed to have bought the table in an exchange of hotel property June 24th, 1872. June 25, 1872, Brown left the parts of the table in the hotel which he sold to Hunt, taking away in his trunk the other articles. Afterwards, but at what precise time does not appear, except that it was between the issue and asserted levy of attachment and the judgment, Hunt obtained from Brown, who was in the hotel in Indiana which he had taken from Hunt, the cloth and other articles which had been carried off, and gave up to Brown—whether as price or compromise is disputed,—a note of the latter for about $60. There was a claim made by Brown in his testimony that at this time Hunt purchased the table also, and agreed to pay an existing mortgage on it of about $52 and the attachment claim, which was then and subsequently contested by him before the justice as before mentioned.

The questions in dispute on the merits were: 1. Whether the table was purchased before the attachment, which did not involve the smaller articles; 2. Whether it was in any event bound by the attachment; 3. Whether if Brown's story is accepted, the property although sold to Hunt before the execution was subject to levy; 4. Whether a tenant named Kingsbury was lessee or only bailee of the table.

Some other collateral questions arose concerning the rights of Hunt as purchaser of the mortgage, as well as upon testimony.

Upon examining the record, certain questions concern-

ing the exclusion of parts of the *res gestæ*, as well as of the reception of such matters, occurring at the time of the exchange of hotels, do not seem to arise, as the rulings were either given as desired, or the answers were immaterial.

In obtaining the property, whatever it was, which was obtained in Indiana, Hunt claimed he gave up a note of little actual value, but while he stated this fact he was not allowed to answer whether it was collectible. We see no very good reason why this should have been excluded, but in the view we take of the case it is not now important.

The court below rightly held the attachment proceedings invalid—so far as the seizure of property was concerned. The affidavit, which stated merely a belief that Brown was about to remove his property, did not state that the affiant had any reason to believe it. And there was no dispute that Hunt had before the execution levy obtained the title to all the property. But the court below held that it was nevertheless lawfully seized by the constable if Hunt bought it after the attachment was sued out and knew Kirby and Fanckboner were trying to collect their debt out of the table, and bought subject to their claim and to the mortgage and agreed to pay them.

As they had no claim whatever on the property itself, we are unable to see how such an obligation, if made, could render the property liable to execution. It may have created a personal obligation to Brown, but the other parties were strangers to it, and even if they could set up equities in it, the property was no longer that of the execution debtor and could not be seized as his, while the theory of all parties is repugnant to any idea that Brown was committing any fraud on his creditors by the arrangement. If the attachment levy had been valid as against Brown originally, such an agreement would have prevented Hunt from buying up the

mortgage which he had agreed to pay, in order to use it to defeat the enforcement of the execution. *Nelson v. Ferris*, 30 Mich., 497. But an obligation not to avoid a valid lien is a very different thing from a promise to pay a debt to a third person which is entirely unsecured,—and such a promise, as we have frequently held, is only good as between parties to the arrangement. And at this very time Brown was contesting this claim in the attachment suit, and occupying apparently an adverse and not a contract relation to his creditors in this matter. However these contradictions may be reconciled, it is not claimed the creditors were parties to the sale to Hunt, if made as Brown asserts. *Higman v. Stewart*, 38 Mich., 513; *Pipp v. Reynolds*, 20 Mich., 88; *Turner v. McCarty*, 22 Mich., 265; *Hicks v. Mc-Garry*, 38 Mich., 667.

As the case is now presented it is impossible on any theory to defeat the right of Hunt to the possession of the property against Strew, and all of the other questions become of no importance. Inasmuch as upon the theory of the defendant in error himself there can be no defense to the suit, we regret that we cannot in reversing the judgment give judgment for plaintiff in error, and stop further litigation which is useless and vexatious.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.