RANDALL *v.* DETROIT & NORTHWESTERN RAILWAY.

VENDOR AND PURCHASER — GUARANTY — DEBTOR AND CREDITOR —
SUBROGATION—EQUITY.

> Where a railway company purchased the property of another
> railway company upon condition that three of the creditors
> of the vendor should guarantee its agreement that its prop-
> erty should be free from all liens, and that all its debts
> should be paid, and the purchaser saved harmless on account
> thereof, the guaranty was for the protection of the purchaser,
> and could not be enforced by a creditor of the vendor, either
> at law or in equity.

Appeal from Wayne; Rohnert, J. Submitted June 5,
1903. (Docket No. 37.) Decided September 30, 1903.

Bill by James A. Randall, trustee, against the Detroit
& Northwestern Railway, the Detroit United Railway,
the Preston National Bank, the Union Trust Company,
William J. Hayes, Harry E. Hayes, and William L.
Hayes, copartners as W. J. Hayes & Sons, Seymour
Brownell, and Edward W. Voigt, for an accounting, and
to enforce an alleged right of subrogation. From an order
sustaining the several demurrers of defendants bank, trust
company, and Hayes & Sons, complainant appeals.
Affirmed.

*John Miner* (*Alfred Russell*, of counsel), for com-
plainant.

*Russel & Campbell*, for defendants trust company and
Hayes & Sons.

*Geer & Williams* and *H. R. Martin*, for defendant
bank.

MONTGOMERY, J. The complainant and defendants
Voigt and Brownell were the owners of all of the stock and

assets of two street railways,—the Grand River Electric
Railroad and the Pontiac & Sylvan Lake Railway.    Upon
March 31, 1899, they sold all of the property and assets of
both railway companies to the Detroit & Northwestern
Railway, receiving in payment stock of the last-named
company and $260,000 of its bonds of an issue of $900,000;
and $560,000 of bonds were issued to the Wolverine Con-
struction Company, a company organized by the same
parties for the purpose of building and constructing the
Detroit & Northwestern Railway, its tracks, overhead
work, etc.   Subsequently it became necessary for the
Detroit & Northwestern Railway to raise further funds to
be used in paying its debts and necessary expenses, and
the 260 bonds, in which the complainant had a one-third
interest, were loaned by the complainant, Voigt, and
Brownell to the railway company to be used for that pur-
pose.   No complaint is made as to the manner in which
the bonds were used, but it is alleged, on information and
belief, that they were pledged as collateral security to the
obligations of the railway company.

May 7, 1901, the Detroit & Northwestern Railway,
being financially embarrassed and insolvent, and unable
to pay its debts or the interest on them, sold its railroad
and property to the Detroit United Railway for the sum of
$855,000, payment to be made in bonds of the latter com-
pany to that amount out of an issue of $1,000,000, secured
by a trust mortgage upon the property purchased; the re-
maining bonds to be used only for the improvement and
extension of the railway so acquired.   One of the conditions
of the sale was that the Union Trust Company, the
Preston National Bank, and W. J. Hayes & Sons, being
creditors and holders of outstanding bonds of the Detroit
& Northwestern Railway, should guarantee the agree-
ment of the Detroit & Northwestern Railway—

" That the property, when sold and delivered to said
Detroit United Railway, shall be free from all liens, ad-
verse rights, titles, and incumbrances, and that all debts,
dues, demands, and claims of every name and nature

against said Detroit & Northwestern Railway, or its property, for which it was liable May 1, 1901, shall be fully paid, satisfied, and discharged before the delivery of the purchase price, and to save the said Detroit United Railway, and such vendee as it may designate, harmless on account thereof."

This guaranty was executed and delivered to the Detroit United Railway. Complainant does not attack the sale; he does not assert that it was illegal or for an inadequate consideration, or that he did not consent to it; neither does he claim that the proceeds were not properly applied in retiring the obligations of the Detroit & Northwestern Railway. The prayer of the bill is:

1. That the Detroit & Northwestern Railway account with respect to the bonds in which the complainant had an interest.

2. That in case it appear that the defendants the Preston National Bank, the Union Trust Company, and W. J. Hayes & Sons have obligated themselves to pay all debts, dues, demands, and claims of every name and nature against said Detroit & Northwestern Railway, or its properties, for which said railway was liable on May 1, 1901, then that the complainant be subrogated to the right of the Detroit United Railway to call on the parties named to respond to such obligation.

Three of the defendants, the Union Trust Company, the Preston National Bank, and W. J. Hayes & Sons, demurred to the bill, and upon hearing the demurrers were sustained. Complainant appeals.

The solicitor for the appellant, in his brief filed in this court, says: "The validity and good faith of the sale is not questioned in this case." No claim is made that the proceeds of the sale passed into the hands of the guarantors, or that they became responsible for them in any way whatsoever, or for their application, or that they derived any benefit from such proceeds, except as they would be entitled, with other creditors, to have paid to them by the Detroit & Northwestern Railway, which received the proceeds, their just proportion of the purchase price. For a

failure in that behalf any bondholder would be entitled to an accounting from the Detroit & Northwestern Railway; but that question is not now before the court.

The appellant admits that, unless he is able to show that in equity he is entitled to be admitted to the benefits of the engagement entered into between the defendants the Union Trust Company, the Preston National Bank, and W. J. Hayes & Sons, on the one part, with the Detroit United Railway, as the purchaser of the assets of the Detroit & Northwestern Railway, on the other part, the decree below ought to be affirmed. But it is contended that the complainant is entitled to be subrogated in place of the Detroit United Railway, and to enforce against the three named defendants the agreement to pay the debts of the Detroit & Northwestern Railway. This presents the question for solution.

The engagement of the three named defendants recites that the Detroit & Northwestern Railway is financially embarrassed, and unable to pay its debts or the interest thereon, and is insolvent. The complainant, as well as the three demurring defendants, was a creditor of the Detroit & Northwestern Railway. He was also a stockholder. So far as the bill discloses, it was to his advantage that the sale of this property should be had, and the proceeds applied to the payment of the debts of the company. It is suggested by the complainant's solicitor — indeed, it is contended and asserted — that, as between the vendee and the vendor, the former had no interest in seeing that all the latter's creditors were fully paid; that the utmost that would be required of the vendee would be good faith, and the utmost that it could insist upon or fairly expect was an indemnity to itself as against any liens or claims of creditors affecting the purchased property. And it is argued from this that the guaranty by the creditors of the vendor's covenant to fully pay and satisfy its liabilities was a distinct and valuable right, to which, unless it be construed as being made for the benefit of creditors, the vendee succeeded by virtue of its purchase of the

property and assets of its vendor, and in whose hands it is void of substantial benefit or advantage to any one.

This is a correct statement of the situation, and it leads to the inquiry as to whether the purpose of this engagement was to obligate the guarantors to actually discharge the debts and to incur an obligation to the creditors of the Detroit & Northwestern Railway of that character, or whether it was intended as an engagement with the Detroit United Railway which might be discharged by any performance satisfactory to that company, the vendee in the agreement between the Detroit & Northwestern Railway and itself.

The rule of law is too well settled in this State to require extended citation of cases that a promise as broad as that which it is claimed by complainant was made in this case is enforceable only by the promisee. *Pipp* v. *Reynolds,* 20 Mich. 88; *Wheeler* v. *Stewart,* 94 Mich. 445 (54 N. W. 172), and cases cited. But it is contended by complainant that this rule of privity is a rule of law, and that a different rule obtains in equity. We recognize fully the rule that where, under equitable considerations, a third party is entitled to be subrogated in equity, he may enforce a promise made by one not in direct privity with him; but this rule arises out of the peculiar relations of the parties, like that of surety and principal, or trustee and *cestui que trust.* In the absence of such relation, and particularly where, as in this case, a subrogation would work injustice and inequity rather than equity, a court of equity will follow the law. See *In re Rotherham Alum & Chemical Co.,* L. R. 25 Ch. Div. 103. In that case obligations had been incurred by the promoter of a corporation. An agreement was made by the corporation (when formed) with the promoter to pay the expenses incurred in organizing the corporation. The solicitor who had performed services in the matter sought to charge the corporation in equity. It was held that this could not be done for want of privity.

In *Nelson* v. *Rogers,* 47 Minn. 103 (49 N. W. 526), a

question somewhat analogous to the one in the present case was presented. In that case a purchaser had accepted a grant in which there was a clause by which the purchaser assumed and agreed to pay a one-third part of an outstanding mortgage on the property. His immediate grantors were not obligated to pay the mortgage. Prior grantors sought to avail themselves of this engagement. The court said:

" Such a stipulation is presumed to be inserted primarily for the protection of the grantor. And it is only where payment of the debt as a personal obligation is necessary to his protection that the clause is to be construed as intended for the benefit of the mortgagee beyond his right of recourse to the land. Otherwise the obligation of the grantee to the mortgagee would be greater than his obligation to the grantor, his promisee."

So in the present case the only concern which the Detroit United Railway has in the payment of the debts of the Detroit & Northwestern Railway is that it should be indemnified against loss to itself, and in an action brought by that company upon this obligation the damages would be limited to such damages as had accrued to it by reason of this failure of the guarantors to pay the outstanding obligations. This, the brief concedes, would be no damage at all; and to construe this engagement into an agreement made for the benefit of the creditors of the Detroit & Northwestern Railway would be to create an obligation on the part of the defendants which would be greater to them than would such obligation be to the party with whom they contracted. We think it very clear that in equity those not parties to the agreement could not be subrogated to greater rights than those with whom the agreement was made. Upon this point the case of *Wilcox* v. *Musche*, 39 Mich. 101, is certainly instructive, if not controlling.

We think the action of the circuit court in sustaining the demurrers should be affirmed, with costs.

HOOKER, C. J., MOORE and CARPENTER, JJ., concurred. GRANT, J., did not sit.