KNIGHTS OF THE MODERN MACCABEES *v.* SHARP.

1. INSURANCE—CONTRACTS—EVIDENCE.

> Evidence *held* not to show that deceased and his wife, who each took out a policy in a fraternal benefit society, payable to the other, agreed that, after the death of either, their children should become beneficiaries under the policy then remaining in force, and that no change in beneficiary should be made by the surviving parent.

163 MICH.—29.

2. SAME—COMPETENCY—CHANGE OF BENEFICIARY.

   Children of the deceased husband, who, under the rules of the insurer, became the contract beneficiaries, after their mother, who was named as beneficiary, died, were entitled to assert the claim that the father was incompetent to afterwards change the beneficiary named in the policy, by the substitution of his second wife.

3. SAME — ACTION — PARTIES — EQUITY — ENFORCEMENT OF CONTRACTS BY THIRD PARTIES.

   If such contract not to change beneficiaries was, in fact, made, no promise being made to any of the children in interest, no fund being in existence nor trust created, and the policy having no paid up value, it was revocable at any time, and the children could not enforce its performance by a suit in equity.

4. CONTRACTS—ENFORCEMENT BY PERSON INTERESTED—PARTIES.

   A third person for whose benefit a contract is made, except in case of provisions for children under a marriage settlement, may not enforce performance in an action at law, or by suit in equity.

Appeal from St. Clair; Law, J. Submitted October 10, 1910. (Docket No. 14.) Decided December 7, 1910.

Bill of interpleader by Knights of the Modern Maccabees against Melinda Sharp and others. From a decree against Melinda Sharp, defendant, she appeals. Reversed.

*John B. McIlwain*, for complainant.

*William E. Brown*, for defendant Melinda Sharp.

*Frank T. Wolcott*, for defendant Lena Sharp and others.

OSTRANDER, J. The issues raised by the answers to complainant's bill of interpleader are sufficiently indicated in the opinion of the learned trial judge, as follows:

"On July 23, 1896, Asa B. Sharp and his first wife, Minnie D. Sharp, lived in the village of Yale, St. Clair county, Mich. At that time he was 30 years of age and his wife 28. They had five small children. He was a laboring man, and his family was dependent on his earn-

ings for support. Some time prior to the above-named date, the husband and wife entered into a contract by the terms of which he agreed he would take out a policy of insurance in complainant order in which his wife should be named as beneficiary and so remain during her life and his, and, in case his wife should die before he did, that their children should always remain the beneficiaries; the wife agreed she would take out a policy of insurance in the Ladies of the Maccabees, a woman's fraternal benefit association, in which her husband should be named as beneficiary, and so remain during his life and hers, and, in case her husband should die before she did, that their children should always remain the beneficiaries. The consideration for this agreement on the part of each was the promise made by the other. The object of this mutual agreement was the protection of the children. The testimony of one witness, Grace O'Dell, goes to the extent of tending to show the existence of this contract prior to the time the policies were issued to the husband and wife, as hereinafter stated, while three other witnesses testify to having heard the husband and wife, in the presence of each other, state what their contract in this regard had been after or about the time of the issuance of the policies. On July 23, 1896, a policy for $1,000 was issued by complainant association to Asa B. Sharp, in which his wife was named as beneficiary, and on the same date a policy of like amount was issued by the Ladies of the Maccabees to Minnie D. Sharp, in which her husband was named as beneficiary.

"After these policies were taken out, Asa B. Sharp was laid up for a time with sickness, and was unable to earn money to support his family and to keep up his assessments, or his wife's assessments, on these policies of insurance. It appears from the testimony, that during this time, Minnie D. Sharp, relying on the agreement with her husband, as heretofore recited, went out washing, housecleaning, and doing other work in order to obtain money to support the family and to keep up the assessments on these policies, and it appears that she did for a time, at least, pay some of the assessments on her husband's policy. On January 1, 1902, Minnie D. Sharp deceased, and the proceeds of her policy in the Ladies of the Maccabees was paid to her husband, Asa B. Sharp, who had remained the beneficiary in her certificate since the time it was issued.

"On August 17, 1904, Asa B. Sharp married Melinda Sharp, now his widow. At this time she was a widow with several children, living on her own farm in Lapeer county, Michigan. On April 19, 1906, Asa B. Sharp signed a paper revoking his former designation of beneficiary in his policy, and designated Melinda Sharp, his wife, as the new beneficiary. At the time he did this he was sufficiently sound in his mind to know who was his former beneficiary, to know to whom payment of benefits would be made in case of his death without any change in his certificate, to know and keep in mind his minor children, who were dependent upon him. He had been sick before this date, and had not fully recovered his physical strength, and, perhaps, not his normal mental powers, but he was sufficiently strong and sound mentally to transact and understand ordinary business affairs. Asa B. Sharp surrendered his first certificate, and on May 8, 1906, a new one was issued to him by complainant association in which claimant, Melinda Sharp, was named as beneficiary, and she remained as such designated beneficiary up to the time of her husband's death."

He concludes that each of said mutual promises was good consideration for the other, and that on the death of Minnie D. Sharp the agreement became fully executed on her part and the husband concluded from changing the beneficiary in his policy.

Two questions are presented, being, *first*, whether the parol agreement alleged to have been made by and between Asa B. Sharp and his first wife, Minnie, was in fact made; and, *second*, whether, if made, Asa was thereby precluded from making a change of beneficiary.

1. As to the question of fact, it is to be considered that the certificates issued by complainant have no value during the life of the assured except the value of the right to keep them in force. There is no cash or other surrender value, and default in the payment of the assessments which are levied avoids the contract. An agreement by the assured that he will never change the beneficiary named in his certificate is of no value to any one, unless the assessments are paid to the time of his death. The evidence relied upon to prove a mutual agreement between

Asa Sharp and his wife Minnie, that neither would ever change the beneficiaries named in their respective certificates, is exceedingly vague and unsatisfactory and is found in the testimony of witnesses who attempt to tell of conversations and statements made in their presence by one or both of the contracting parties. The desire of both the husband and wife to make some provision for each other and, directly or indirectly, for their children, is manifested by their becoming members of complainant, taking out the certificates, and paying assessments. The statements and conversations related by the witnesses evidence little, if anything, more than this. It is true that one or more witnesses testify to a conclusion that an agreement existed between the husband and wife that the certificate held by the survivor of them should be payable to the children. For example, a witness testified:

" Mr. and Mrs. Sharp agreed before me, in my presence, that they should take out insurance in the Maccabees, his drawn to her and hers to him as long as they lived, and after her death his should run to the children, and after his death hers should run to the children, and never should be changed."

But when they detail what was said it amounts to little more than the statement of facts already related, namely, that by the terms of the certificates, and the laws of complainant, the certificates, if in force at the death of either, would benefit either the survivor or the children, and, if the survivor, then, indirectly, the children also. This testimony gains no extended meaning from the fact that either paid assessments levied upon the other at the cost of personal labor and inconvenience. In doing so, especially during the sickness of one of them, only ordinary self-interest was served. It is a fair, if not a necessary, inference from the testimony that the husband paid the assessments upon both certificates except upon occasion or occasions when he was ill, when his wife Minnie paid them. Nor does the testimony acquire any extended or peculiar meaning from the fact that upon the death of

Minnie, Asa received the benefit of the fund payable according to her certificate. He was the beneficiary named in the certificate. In other words, there is nothing peculiar in the facts that a husband and wife each took out a certificate payable to the other, that either paid assessments upon both certificates, and that the husband, after the death of the wife, received, what her certificate promised him, the death benefit. They are material facts here only upon the theory that they occurred in the carrying out of mutual promises, the making of which must be otherwise established.

It seems that, in the contest made before the complainant's tribunal, the minors asserted as reason for refusing payment to the beneficiary named in the policy, that their father, the assured, was not mentally competent to make a change of beneficiaries, and they asserted no other reason. This, also, was one of the issues of fact raised by the answer. This was an issue the children could rightfully raise, since, after the death of their mother, they were, by the rules of complainant, the contract beneficiaries. *Grand Lodge A. O. U. W.* v. *McGrath*, 133 Mich. 626 (95 N. W. 739); *Grand Lodge A. O. U. W.* v. *Frank*, 133 Mich. 232 (94 N. W. 731). It is significant that both grounds for contest were not asserted before the suit was begun.

2. Assuming the mutual promises never to change beneficiaries to have been made as is claimed, upon what theory may the children enforce the contract? No promise was made to them, or any of them, no consideration for the promise moved from them. The agreement related to no fund in existence. No trust was created. I find no reason for thinking that the parties were not at liberty, at any time, to revoke their promises. It is true that after the death of the mother there could be no mutual revocation, but, unless some legal interest in the performance of the promise vested in the children when the promise of the father was made, such interest never vested.

It is the general rule in England that a third person can-

not become entitled by the contract itself to demand the performance of any duty under the contract. Pollock, Principles of Contract (7th Ed.), p. 199. The rule, contracts creating trusts aside, is the same whether such enforcement is attempted at law or in equity. *Ibid*, p. 213. In this State the English rule has been followed when the attempted enforcement of the contract by a third person was at law. *Pipp* v. *Reynolds*, 20 Mich. 88; *Turner* v. *McCarty*, 22 Mich. 265; *Hicks* v. *McGarry*, 38 Mich. 667; *Hunt* v. *Strew*, 39 Mich. 368; *Hidden* v. *Chappel*, 48 Mich. 527 (12 N. W. 687); *Edwards* v. *Clement*, 81 Mich. 513 (45 N. W. 1107); *Linneman* v. *Moross' Estate*, 98 Mich. 178 (57 N. W. 103, 39 Am. St. Rep. 528).

There is a well-recognized exception to the rule in England as to the provisions contained in a settlement made upon and in consideration of marriage, for the benefit of children to be born of the marriage. Whether there is, in that jurisdiction, any other or further exception may be doubted. *Tweddle* v. *Atkinson*, 1 B. & S. 393, 30 L. J. Q. B. 265. See, also, *Exchange Bank of St. Louis* v. *Rice*, 107 Mass. 37 (9 Am. Rep. 1); *Marston* v. *Bigelow*, 150 Mass. 45 (22 N. E. 71, 5 L. R. A. 43); and, generally, Pollock, Principles of Contract (7th Ed.), chapter 5; Harriman on Contracts (2d Ed.), pp. 212-216; 9 Cyc. pp. 374-385. The contention of appellees is that the principle underlying the English exception to the rule should be extended, at least in equity, so as to support the enforcement by children of contracts made by their father or mother, with each other or with strangers, for their benefit, and *Buchanan* v. *Tilden*, 158 N. Y. 109 (52 N. E. 724, 44 L. R. A. 170, 70 Am. St. Rep. 454), is cited and relied upon.

The courts of New York do not follow the English rule. In the case cited, a woman was permitted to recover, in an action at law, a sum of money which defendant had promised her husband to pay to her upon a consideration moving from the husband and others to the defendant

and others. The sum of money promised to be paid to the wife was $50,000. The trial court gave her judgment. The appellate division of the Supreme Court reversed the judgment and the court of appeals reversed the appellate division by a vote of four to three of the judges. It will be discovered from the opinion that the points involved, and concerning which the judges disagreed, were whether the promise made by the defendant to the third person was upon a valid consideration, and whether the promisee had a legal interest that the contract be performed in favor of the plaintiff. If these things appeared, then, under the rule laid down in *Lawrence* v. *Fox*, 20 N. Y. 268, and *Durnherr* v. *Rau*, 135 N. Y. 219 (32 N. E. 49), plaintiff was entitled to enforce the contract at law. The majority opinion concludes with the statement, that—

"The case at bar is decided upon its peculiar facts. We do not hold that the mere relation of husband and wife alone constituted a sufficient consideration to enable the plaintiff to maintain this action. We deem it unnecessary to decide that question at this time. What we do hold is that the equities of the plaintiff" [her interest as an adopted child who, in conscience and equity, but not legally, was entitled to a share of the fund sought to be recovered and which was recovered by defendent with the aid of plaintiff's husband] "were such that, when considered in connection with the duty of her husband to provide for her future, and with that purpose in view the money was procured for the defendant to institute and pursue the necessary litigation to secure the fund to which her equities related, they, all taken together, were sufficient to sustain the plaintiff's action."

It cannot be said that the decision sustains appellees' contention, and we are referred to none in which the general rule in force here is recognized which does sustain it. The general rule in this State is regarded as settled. I see no reason for saying that it is not the same in proceedings at law and in equity. To what extent and under what circumstances an exception to the rule should be recognized in favor of the enforcement by children of contracts

(other than those creating trusts), made for their direct or indirect benefit, by persons nearly related to them or by those sustaining the duty to provide for them, is a subject which needs to be considered no further than this, that the mutual promises of a father and mother, who each hold the certificate of a beneficial association in which the other is named as beneficiary, never to change the beneficiaries so named, create no legal or equitable interest of the children in the fund derived on the death of the surviving parent, although, if no such change had been made, they would have been the legal beneficiaries, and although the mutual promises of the parents contemplated that in such case they should be the legal beneficiaries.

The case presented is ruled precisely as it would be ruled if the children, in the lifetime of the father, were seeking specific performance of the alleged contract or an injunction to restrain a threatened change of beneficiaries. It may be added, although the suggestion relates rather to the facts than to the law, that the children, appellees, appear to have no particular claim, as against the appellant, to equitable consideration. It is not claimed that appellant knew of any arrangement between her husband and his former wife about life insurance. His relation to her is a sufficient reason for insuring his life for her benefit. If, instead of pursuing the method of substituting one beneficiary for another, he had refused to pay assessments, thus permitting the original certificate to lapse, and procured one in which appellant was named as beneficiary, it is clear that her right to any fund derived therefrom and from his death, would be unassailable.

The decree below, except as to the provision for costs to complainant, is reversed, and a decree will be entered in this court for the payment of the fund to the appellant, who will recover of the appellees the costs of both courts.

BIRD, C. J., and BROOKE, BLAIR, and STONE, JJ., concurred.