### JOLLS v. BURGESS.

1. CONTRACTS—ORAL AGREEMENT—WILLS.

Testimony by disinterested witnesses, together with that of plaintiffs' mother, *held*, sufficient to establish oral contract by plaintiffs' uncle to will them his property in consideration of their refraining from contesting their father's will.

2. SAME—AGREEMENT NOT TO CONTEST WILL—CONSIDERATION.

Agreement by plaintiffs to refrain from contesting their father's will was good consideration for promise of uncle, who was beneficiary thereunder, to will them his property.

3. FRAUDS, STATUTE OF—PERFORMANCE.

Uncle's oral agreement to will plaintiffs his property in consideration of their refraining from contesting their father's will, under which uncle was beneficiary, was taken out of statute of frauds by performance on their part.

Validity of agreement not to contest will, see annotation in 13 L. R. A. (N. S.) 484; 55 A. L. R. 812.

4. TRUSTS—CONSTRUCTIVE TRUST.

Where uncle, in violation of contract to will his property to plaintiffs, transferred part of it to defendant without consideration and willed her the balance, defendant took same subject to constructive trust impressed thereon for benefit of plaintiffs.

Appeal from Jackson; Williams (Benjamin), J. Submitted October 8, 1930. (Docket No. 40, Calendar No. 35,035.) Decided December 2, 1930.

Bill by Edmund J. Jolls and another against Maude Hamlin Burgess for discovery, specific performance of contract of Charles Jolls, deceased, to execute a will, and other relief. From decree for plaintiffs, defendant appeals. Affirmed.

*Richard Price* and *Whiting & Kleinstiver,* for plaintiffs.

*Reuben H. Rossman* and *Nathan E. Bailey,* for defendant.

McDONALD, J. The plaintiffs are the children and only heirs of Edmund Jolls, deceased. Charles Jolls, deceased, was the brother of Edmund and uncle of the plaintiffs. The defendant is not related to any of the parties. She was a long-time acquaintance and friend of Charles Jolls. He gave her a considerable amount of money and securities during the latter part of his life, and, on his death, left a will in which she was given the balance of the estate. The plaintiffs claim that long before his gifts to the defendant he had made an oral agreement with them in which he promised that he would will them all of his property in consideration of refraining from contesting their father's will, in which he was a beneficiary to the extent of one-fourth of the estate, and, in reliance on such agreement, they made no contest,

and the will was admitted to probate. The bill alleges the agreement, its violation by Charles Jolls, and prays for specific performance, for an accounting, that a constructive trust be impressed for the benefit of the plaintiffs upon all of the property which the defendant received from Charles Jolls, deceased, that she be compelled to convey it to the administrator of his estate, that she be restrained from disposing of it, and that the title thereto be declared to be in the plaintiffs.

The defendant, answering, denied that she unlawfully obtained any property from Charles Jolls, deceased, denied that by fraud and undue influence she had induced him to make a will in her favor, denied the existence of any contract between him and the plaintiffs wherein he agreed to will them all of his property in consideration that they refrain from contesting their father's will, and prayed that the bill be dismissed.

On the hearing, the court entered a decree granting the relief prayed for by the plaintiffs, and the defendant appealed.

It is the defendant's contention that the plaintiffs have not sustained the burden of proving the contract alleged, that the testimony does not show a contract sufficiently definite in its terms to be binding and enforceable.

The plaintiff Edmund J. Jolls was not present in the probate court when the contract was made. Mrs. Skinner was there with her attorney, Mr. Price, and took a part in it, but her testimony is excluded by reason of the statute which prohibits opposite parties from testifying to matters equally within the knowledge of a deceased. Her mother, Mary Dake, was there, and on this hearing testified that Charles Jolls was present with Mr. Cobb, his attorney, that

Mr. Cobb advised against the contest, that he said he could see no reason for it because Charles Jolls would leave the property he was to receive under this will and all of his other property to the plaintiffs when he died, that he had no children of his own, and that all of his property would be left to the plaintiffs, his brother's children. Thus far, the statements attributed to Mr. Cobb are declarations of Mr. Jolls' intentions as to the disposition of his property, but she further testified:

"After Mr. Cobb made that statement, Mr. Price turned to Mr. Jolls and asked him if the statement Mr. Cobb had made was right; if he would do as Mr. Cobb said he would. He said yes, and nodded his head.    *    *    *

"After she (Mrs. Skinner) heard what Mr. Cobb told the court, and what Mr. Jolls said, she told Mr. Price that she would not contest the will; that there would be no contest."

In addition to the testimony of Mrs. Dake, which the defendant says fails to show the elements of an enforceable contract, some neighbors and friends of Mr. Jolls testified to conversations with him in which he admitted having agreed to will all of his property to the plaintiffs if they would stop the contest of their father's will.

Mrs. Pearl Petrie testified:

"*Q.* Did Charles Jolls have a conversation with you about some conversation he had with Elizabeth Skinner?

"*A.* He promised her if she would not break her father's will he would give her his property at his death."

James McKessy testified:

"I don't remember how the conversation came up, but he told me in order to settle the will up, her

father's will, when she started to contest the will, that he told her if she would drop that case, at his death that her and her brother would get all of his property and what their father left them. He told me that just like I am telling it."

Joseph E. Boucher testified:

"Q. Now, you also say, in your affidavit, that Charles Jolls also told deponent that he had promised said children to leave his property to them, if they didn't contest their father's will; that he told Elizabeth Skinner that he had made his will in favor of her and her brothers, and if they contested their father's will, they wouldn't get a cent?

"A. That is what he said."

We think the testimony of these disinterested witnesses, together with that of the plaintiffs' mother, establishes the contract in substance as alleged. Charles Jolls promised to will his property to the plaintiffs if they would stop the contest of their father's will. On that promise the contest was stopped. The testimony shows a real controversy of merit as to the validity of their father's will. To refrain from contesting it was a good consideration for the promise to leave them his property. They did stop the contest, which was all they agreed to do, and by thus completely performing on their part, the agreement was saved from the operation of the statute of frauds. The evidence shows a valid contract.

It is undisputed that the defendant received securities and cash from Charles Jolls to the amount of $14,500, for which she paid no consideration. In view of the evidence, the trial judge said:

"Under all the circumstances of this case and the facts as found by the court, Charles Jolls was violating his contract with Elizabeth Skinner when he

made these transfers to defendant, and as defendant did not take the securities for value, she must hold them subject to existing equities affecting them. Charles was also violating his contract when he made his will in favor of the defendant."

It is apparent from the evidence that in transferring his cash and securities to the defendant and leaving the balance of his estate to her by will, Charles Jolls deliberately sought to deprive the plaintiffs of the benefit of their contract with him and that defendant was a willing party to the scheme.

The trial court reached the right conclusion. The relief granted by the decree is just and correct in form, and is in all respects affirmed, with costs to the plaintiffs.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.