PEOPLES SAVINGS BANK *v.* GEISTERT.

VAN RAALTE *v.* SAME.

1. RECEIVERS—VENDOR AND PURCHASER—ASSIGNMENT BY QUIT-
   CLAIM—AGREEMENT TO PAY VOID WHERE ASSIGNEE UNDER NO
   OBLIGATION TO PAY.
   
   In authorizing sale by receiver of insolvent's interest in land
   contracts acquired from vendee by quitclaim deed without
   any assumption of vendee's contract obligations, court had
   no power to require purchaser from receiver to agree to pay
   said contracts, and therefore his agreement to pay vendors
   was *nudum pactum.*

2. VENDOR AND PURCHASER—ASSIGNMENT OF VENDEE'S INTEREST BY
   QUITCLAIM—PRIVITY OF OBLIGATION.
   
   Privity of obligation between vendors and vendee in land con-
   tracts did not carry over to assignee of vendee by naked quit-
   claim deed, nor did liability for deficiency upon foreclosure.

3. SPECIFIC PERFORMANCE—VENDOR AND PURCHASER—LIABILITY OF
   VENDEE'S ASSIGNEE.
   
   Where insolvent's interest in certain land contracts was acquired
   from vendee by quitclaim deed without any assumption of
   vendee's contract obligation, vendors may not specifically
   enforce said contracts against purchaser from insolvent's
   receiver, notwithstanding purchaser in his offer to purchase,
   agreed to pay contract; there being no privity of contract
   between him and vendors, and his agreement to pay being
   *nudum pactum.*

Appeals from Ottawa; Miles (Fred T.), J. Sub-
mitted January 21, 1931. (Docket Nos. 58, 59, Cal-
endar Nos. 35,238, 35,239.) Decided April 7, 1931.
Rehearing denied June 1, 1931.

Separate bills by Peoples Savings Bank, admin-
istrator of the estates of Patrick and Bella Mc-
Carthy, and Abbie Van Raalte against Lewis A.
Geistert, assignee of Grand Rapids Trust Company,
as receiver of the Sunset Terrace Resort Company,

insolvent, and others for specific performance of land contracts. Decrees for plaintiffs. Defendant Geistert appeals. Reversed.

*Leo C. Lillie,* for plaintiffs.

*Dunham, Cholette & Allaben* (*Knappen, Uhl, Bryant & Snow,* of counsel), for defendant Geistert.

POTTER, J. Fred Z. Pantlind, as trustee, bought the lands involved herein on several land contracts. The contracts contained a covenant against assignment without the written consent of the vendors indorsed thereon. No indorsement of vendor's consent to their assignment was made on any of the contracts. Pantlind, as trustee, transferred his vendee's interest in the land and contracts by quitclaim deed to the Sunset Terrace Resort Company, a corporation. The articles of association of the Sunset Terrace Resort Company state it is assignee of the vendee's interest of Pantlind, trustee, in the land contracts. The Sunset Terrace Resort Company became insolvent. The Grand Rapids Trust Company was appointed receiver for it by the circuit court of Kent county, in chancery, and the property and assets of the corporation were offered for sale by the receiver and sold at receiver's sale. Defendant Geistert made an offer in writing for the assets and property of the Sunset Terrace Resort Company which contained the following:

"This offer will be sufficient to pay in full all claims now allowed, except claims arising upon land contracts, mortgages, taxes and other liens upon real estate, which I will assume and will pay or make such settlement as may be possible after receiving proper conveyances or assignments from the receiver."

Geistert's offer was accepted, an appropriate order entered by the court in the receivership proceedings, the sale made, approved, and confirmed by order of the court. Plaintiffs seek specific performance of the land contracts and the right to a decree for deficiency against defendant Geistert. From a decree for plaintiffs, defendant Geistert appeals.

(1) Are plaintiffs entitled to specific performance and a decree for deficiency against defendant Geistert?

"The principle which is material to be considered in the present case is, that the court gives specific performance instead of damages only when it can by that means do more perfect and complete justice." *Wilson* v. *Railway Co.,* L. R. 9 Ch. (Eng.) 279.

"It is strictly an ancillary and supplementary remedy, and is confined to those classes of agreements for whose breach the mere payment of pecuniary damages is acknowledged to be either impracticable or inadequate." Pomeroy, Specific Performance (3d Ed.), § 4. See, also, *McCall* v. *Atchley,* 256 Mo. 39 (164 S. W. 593).

"The only thing due to the vendor is his money, and this is due as an ordinary money debt, which it is the object of the suit to collect. * * * While at law the title remains in the vendor, yet in equity the contract conveys it to the vendee, and the only principle which allows the vendor to sue for his money, and at the same time seek security against the land, is the one which recognizes the analogy to a vendor's lien. * * * A bill by a vendor is always to get his money, and the lien on the land is only a means of collecting it in whole or in part." *Fitzhugh* v. *Maxwell,* 34 Mich. 138.

"It is in the nature of a bill of foreclosure, and when the rights under the contract are determined, the court will have full power to provide for the

protection of all equities, and to order a sale for the satisfaction of moneys due, if necessary." *Day* v. *Cole,* 56 Mich. 294.

"It is well settled that specific performance is granted in favor of the vendor of land as freely as in favor of the vendee, though the relief actually obtained by him is the recovery of money, the purchase price." *Pearson* v. *Gardner,* 202 Mich. 360 (L. R. A. 1918 F, 384).

(2) It is fundamental that the contract between the parties must be mutual and the rights thereunder reciprocal in order to entitle either to specific performance.

"The contract or agreement sought to be enforced, must be mutual, and the tie reciprocal, or a court of equity will not enforce a performance." *McMurtrie* v. *Bennette,* Harr. Ch. 124.

"It is a general rule that a court of equity will not decree a specific performance where the remedy is not mutual, or one party only is bound by the agreement." *Hawley* v. *Sheldon,* Harr. Ch. 420.

Where there is no mutuality of obligation or no mutuality of remedy, a specific performance will be refused. *Gillette* v. *Metzgar Register Co.,* 243 Mich. 48; *Gannon* v. *Stansfield,* 216 Mich. 440.

"That as a requisite to specific performance there must be mutuality. of obligation and of remedy has been made in innumerable cases and is accepted by the textbooks as a cardinal principle." 36 Cyc. p. 621.

(3) The assignment of a land contract is a mere release of interest. The vendor may not compel specific performance by the assignee of the vendee.

"When an agreement has been assigned, the vendor cannot compel the assignee to perform,

there being no contract between them. \* \* \* In such case the vendor must enforce the contract against the original vendee." Waterman, Specific Performance, § 68.

The assignee of the vendee is not a proper party to a bill for specific performance. *Anonymous* v. *Walford,* 4 Russ. 372 (38 Eng. Rep. Repr. 845); *Corbus* v. *Teed,* 69 Ill. 205; Waterman, Specific Performance, § 59.

"The vendor cannot have specific performance against his vendee's assignee, although he has paid part of the consideration; it is optional with the assignee whether or not to complete the contract." 36 Cyc. p. 760.

"The purchaser of the vendee's interest at a judicial sale on a decree against the vendee may sue in his own name, and this principle would include the assignee in bankruptcy or insolvency, if the contract is itself assignable. While the assignee of the vendee may thus sue the vendor to enforce a specific performance, the vendor cannot, upon a mere assignment, maintain a suit against the assignee; his remedy is against the original vendee alone, unless in the change of parties the whole transaction amounts to a novation." Pomeroy, Specific Performance (3d Ed.), § 487.

In *Corbus* v. *Teed, supra,* the vendee sued his assignee to compel him to perform. It was said:

"Complainant could not compel him to perform. Should he file a bill for such purpose the answer would be that he had made no contract with complainant. Hastings by the assignment had a right to pay the money and demand a deed. In such case a court of equity would, undoubtedly, compel a conveyance, if the transaction was *bona fide.* The offer of the deed to Corbus was according to the contract."

(4) There was no agreement by the Sunset Terrace Resort Company in writing or otherwise, to pay the amount due or to grow due on the land contracts. Geistert as purchaser at receiver's sale, could acquire no other or greater interest than that possessed by the receiver, which in turn had no other interest than that of the Sunset Terrace Resort Company. Reliance by plaintiff to sustain its proposed decree for deficiency against defendant Geistert is based upon the language of his bid above quoted, accepted by the trustee of the sale, its approval by the court, the sale made, and the order of confirmation entered.

(5) There is no doubt but the purchaser of mortgaged lands who assumes and agrees in writing to pay the mortgage may be held by a personal decree for any deficiency which may result from the sale of the premises. *Crawford* v. *Edwards,* 33 Mich. 354; *Miller* v. *Thompson,* 34 Mich. 10; *Taylor* v. *Whitmore,* 35 Mich. 97; *Higman* v. *Stewart,* 38 Mich. 513; *Winans* v. *Wilkie,* 41 Mich. 264; *Booth* v. *Conn. Mutual Life Ins. Co.,* 43 Mich. 299; *Gage* v. *Jenkinson,* 58 Mich. 169; *Shelden* v. *Warner's Estate,* 59 Mich. 444; *Winsor* v. *Ludington,* 77 Mich. 215; *Corning* v. *Burton,* 102 Mich. 86; *Union Trust Co.* v. *Detroit Motor Co.,* 117 Mich. 631.

This liability did not exist at common law but is based upon the statute, 3 Comp. Laws 1929, § 14368, which provides:

"If the mortgaged debt be secured by the obligation or other evidence of debt of any other person besides the mortgagor, the plaintiff may make such person a party to the bill, and the court may decree payment of the balance of such debt remaining unsatisfied, after a sale of the mortgaged premises, as well against such other person as the mortgagor, and may enforce such decree as in other cases."

It has been repeatedly held by the court that this statute is the sole basis of the right to a decree for a deficiency against a purchaser of mortgaged premises who assumes and agrees to pay the mortgage. *Booth* v. *Conn. Mutual Life Ins. Co., supra; Gage* v. *Jenkinson, supra; Winsor* v. *Ludington, supra; Corning* v. *Burton, supra.*

In *Gage* v. *Jenkinson, supra,* it is said: -

"The practice in this class of cases of allowing a personal decree against even the mortgagor himself comes from no original equitable jurisdiction, but springs from quite recent statutory authority."

In *Winsor* v. *Ludington, supra,* it is said:

"The power to make a personal decree against the makers of a mortgage upon real estate, or against others interested in its payment, upon a foreclosure in chancery, comes entirely from the statute."

In *Corning* v. *Burton, supra,* it is said:

"A personal decree may be rendered in a foreclosure case against a grantee of the mortgagor, who has accepted a deed stating that it is subject to the mortgage, which the grantee assumes and agrees to pay. It is settled by repeated decisions in this State and in New York, from which State we borrowed the statute (2 How. Stat., § 6704) which authorizes it."

This rule has no application to land contracts or the assignees thereof.

(6) The assignee of the vendee under land contract at common law was not liable for a deficiency though there was an agreement in writing between the vendee and his assignee that the latter assumed and agreed to pay the amount due and to grow due upon the contract for the reason there was no

privity of contract between the assignee of the vendee and the vendors. *Pipp* v. *Reynolds,* 20 Mich. 88; *Turner* v. *McCarty,* 22 Mich. 265; *Halsted* v. *Francis,* 31 Mich. 113; *Osborn* v. *Osborn,* 36 Mich. 48; *Hicks* v. *McGarry,* 38 Mich. 667; *Hunt* v. *Strew,* 39 Mich. 368; *Wood* v. *Truax,* 39 Mich. 628; *Hidden* v. *Chappel,* 48 Mich. 527; *Necker* v. *Harvey,* 49 Mich. 517; *Monaghan* v. *Agricultural Fire Ins. Co.,* 53 Mich. 238; *Edwards* v. *Clement,* 81 Mich. 513; *Wheeler* v. *Stewart,* 94 Mich. 445; *Linneman* v. *Moross Estate,* 98 Mich. 178 (39 Am. St. Rep. 528); *Chase* v. *Warner,* 106 Mich. 695; *K. O. M. M.* v. *Sharp,* 163 Mich. 449 (33 L. R. A. [N. S.] 780); *Clay Lumber Co.* v. *Hart's Branch Coal Co.,* 174 Mich. 613; *Edwards* v. *Thoman,* 187 Mich. 361.

In 13 C. J. p. 703, it is said:

"In England it is held, subject to the exceptions hereafter stated, that, where two persons make a contract in which one of them promises to confer benefits on a third person, the latter cannot sue on the contract, at law or in equity, for the money or other benefit which it is promised that he shall receive. The same doctrine, with some difference as to the exceptions, has been held, in the absence of a statute, in some of the United States, * * * The reason is that it is held essential that the consideration shall move from plaintiff; there must be privity between the parties in order to support an action on the contract."

This court, in *K. O. M. M.* v. *Sharp, supra,* said:

"It is the general rule in England that a third person cannot become entitled by the contract itself to demand the performance of any duty under the contract. Pollock, Principles of Contract (7th Ed.), p. 199. The rule, contracts creating trusts aside, is the same whether such enforcement is attempted at law or in equity. *Ibid.,* p. 213. In this State the

English rule has been followed when the attempted enforcement of the contract by a third person was at law. *Pipp* v. *Reynolds,* 20 Mich. 88; *Turner* v. *McCarty,* 22 Mich. 265; *Hicks* v. *McGarry,* 38 Mich. 667; *Hunt* v. *Strew,* 39 Mich. 368; *Hidden* v. *Chappel,* 48 Mich. 527; *Edwards* v. *Clement,* 81 Mich. 513; *Linneman* v. *Moross Estate,* 98 Mich. 178 (39 Am. St. Rep. 528)."

In *Pipp* v. *Reynolds, supra,* the court, by Justice GRAVES, said of a contract sued upon:

"The plaintiffs who sue upon it are not shown to have been connected with the consideration or promise, or to have been privy to the transaction."

In *Turner* v. *McCarty, supra,* plaintiff sued on a written contract between others by which he was to be paid. It was said:

"There was no contract relation between the parties to this suit. Turner was only bound to his assignor."

In *Osborn* v. *Osborn, supra,* the court, commenting on *Pipp* v. *Reynolds, supra,* and *Turner* v. *McCarty, supra,* and *Halsted* v. *Francis, supra,* said:

"In each of those cases the plaintiff counted on a promise made to a third person and not to himself."

In *Hicks* v. *McGarry, supra,* it is said:

"We have held in *Pipp* v. *Reynolds,* 20 Mich. 88 and *Turner* v. *McCarty,* 22 Mich. 265, that no action at law will lie by a third person against a promisor who has promised to pay an obligation from a debtor of such person, but who has had no dealings with the creditor."

*Hunt* v. *Strew, supra,* holds that a promise to pay a debt to a third person "is only good as between parties to the arrangement."

In *Necker* v. *Harvey, supra,* it is held that "a third person cannot sue for damages growing out of a mere breach of a contract between others." (Syllabus.)

In *Edwards* v. *Clement, supra,* it was held that though one person contracted with another to pay a third, such third person could not sue upon the contract because not a party to it; there is as to him no privity of contract.

In *Wheeler* v. *Stewart, supra,* it is said:

"This case comes within the general rule that a promise made by one person to another for the benefit of a third person, a stranger to the consideration, will not support an action by the latter."

In *Linneman* v. *Moross Estate, supra,* the court, citing many of the cases above, adhered to "the rule that a promise made by one person to another for the benefit of a third—a stranger to the consideration—will not support an action by the latter."

In *Clay Lumber Co.* v. *Hart's Branch Coal Co., supra,* the court cited with approval the rule of *K. O. M. M.* v. *Sharp, supra.*

In *Edwards* v. *Thoman, supra,* the court expressly approved the rule as stated in *Wheeler* v. *Stewart, Linneman* v. *Moross Estate,* and the other cases cited above, citing also *Randall* v. *Railway,* 134 Mich. 493.

This court for more than half a century recognized and adhered to the rule as stated in *K. O. M. M.* v. *Sharp, supra,* stated in 13 C. J. p. 703, and sustained by a great number of cases besides those cited above.

(7) It is a maxim which needs no citation of authority that equity follows the law.

"Equity cannot create contracts any more than other courts." *Wood* v. *Truax, supra,*

"It is not the province of the court to alter a contract by construction or to make a new contract for the parties." 13 C. J. p. 525.

"Neither has equity any power to make contracts for the parties which they have not made for themselves." 21 C. J. pp. 153, 154.

"Courts are not called upon when construing contracts, to abrogate or make them for the parties, but when required, to ascertain their provisions and enforce them." *Thayer* v. *Augustine,* 55 Mich. 187 (54 Am. Rep. 361).

Equitable reasons cannot control "against any well-settled rule of law." *McCurdy* v. *County of Shiawassee,* 154 Mich. 550.

If defendant Geistert is not liable at law, because of his bid, he is not liable in equity. This is the rule in Connecticut, Delaware, Georgia, Massachusetts, New Hampshire, Virginia, and Wyoming, as well as in Michigan. 13 C. J. p. 703, 6 R. C. L. § 271, pp. 882–885. No clearer statement of the rule has ever been made than that by Mr. Justice OSTRANDER for the court in *K. O. M. M.* v. *Sharp, supra,* when, citing Pollock on Contracts (7th Ed.), p. 213, he said:

"The rule, contracts creating trusts aside, is the same whether such enforcement is attempted at law or in equity."

The foreclosure of mortgages is a statutory proceeding, *Janower* v. *Sibley Lbr. Co.,* 245 Mich. 571, and the statutory rules governing them are not subject to application to other cases to which the rules have not been extended. Courts of equity find their

basis in the Constitution. They cannot enlarge or impair the obligation of contracts.

(8) In case of novation, a new contract between the creditor or vendor and the third person is substituted in place of the original contract. *Clay Lbr. Co. v. Hart's Branch Coal Co., supra.*

"Where a debtor and his creditor and a third person enter into an agreement by which the third person is to pay the debt to the creditor and the debtor is released there is a novation, and the creditor may sue the third person. In such a case, however, there is a contract between the creditor and the third person. If the promise is made by the third person to the debtor and the creditor is not a party thereto he cannot sue, unless the circumstances bring the case within an exception to the general rule." 13 C. J. p. 705.

(9) Though there may be analogies between the rights of a vendor and vendee, and a mortgagor and mortgagee, these relations are separate and distinct. The mortgagor holds the legal title of real estate mortgaged; the vendor holds the legal title of real estate sold. The one is subject to a mortgage given to the mortgagee. The other is subject to a contract given to the vendee. On the performance of the terms of a mortgage, the mortgagor's legal title remains unincumbered. On the performance of the terms of a land contract by the vendee he is entitled to a conveyance. The right to a conveyance in one case arises from breach of contract; the right to conveyance in the other case arises from performance of the contract. The vendor holds the legal title and on foreclosure cuts off the right of vendee to acquire the legal title. In mortgage foreclosure the mortgagee may acquire legal title only by foreclosure and sale of property, payment of the

purchase price, and expiration of the equity of redemption.

(10) The right to take judgment for deficiency against the purchaser of mortgaged premises who promises and agrees to pay the mortgage arises solely from statute, which is in derogation of the common law, is to be strictly construed and not extended by implication or construction to cases not clearly falling within its terms.

By 3 Comp. Laws 1929, § 14018, it is provided:

"In all equitable actions, all persons having an interest in the subject of the action and in obtaining the relief demanded, may join as plaintiffs, and any person may be made a defendant who has or claims an interest adverse to the plaintiff. Any person may at any time be made a party if his presence is necessary or proper to a complete determination of the cause. Persons having a united interest must be joined on the same side as plaintiffs or defendants, but when any one refuses to join, he may for such reason be made a defendant."

This statute was borrowed from Federal Equity Rule No. 37, and was before the court in *Preston* v. *Preston*, 205 Mich. 646, and *Preston* v. *Preston*, 207 Mich. 681. These cases hold this statute changed the rule established by the prior decisions of the court, so as to permit any party having an interest in the subject-matter of the action or the relief sought to become parties plaintiff.

This is an example of the rule that hard cases make poor law. If this is to stand, the profession should know that the cases mentioned in paragraph numbered (6) above are overruled and the common-law rule, matured by the wisdom of ages, is abrogated.

The language quoted in *Preston* v. *Preston*, 207 Mich. 681, from *Palmer* v. *Bray*, 136 Mich. 85, to

justify the holding, was *dictum.* The mortgagees, who did not furnish the consideration, were expressly named in the mortgage foreclosed. ''They were not therefore strangers to the contract'' but parties to it. The court, upon the authority of *Corning* v. *Burton, supra,* said:

''It has been repeatedly held by this court that in a suit in equity a person for whose benefit a promise is made may enforce it in his own name.''

No case was cited except *Corning* v. *Burton,* to support this statement, and that case, as above pointed out, was clearly and unequivocally based upon the statute (2 How. Stat. § 6704, now 3 Comp. Laws 1929, § 14368). Moreover, Federal Equity Rule No. 37 has to do with intervention, which the Michigan legislature sought to cover in 3 Comp. Laws, 1929, §§ 14018, 14019.

(11) In *Preston* v. *Preston,* 207 Mich. 681, it was held that because the contract was made in the presence of the blind girl and for her benefit, she was a party to the contract. The court said:

''We are of opinion that the plaintiff was, under these circumstances, a party to the contract.''

That one is present when a contract is made does not make him a party to it. This case makes no pretense of holding third persons not parties to a contract may maintain an action thereon. It re-affirms the doctrine that only parties to a contract may sue upon it.

*Clark Memorial Masonic Ass'n* v. *Colman's Estate,* 222 Mich. 599, relies upon the *Preston Case* as controlling. The *Colman Case* is sustainable under the principles established in *Allen* v. *Duffie,* 43 Mich. 1 (38 Am. Rep. 159). There was no thought of the *Preston Case* overruling the *Maccabee Case* (*K. O. M. M.* v. *Sharp, supra*). The court, in *Hines*

v. *Hines*, 212 Mich. 50, expressly approved the holding in *K. O. M. M.* v. *Sharp, supra.*

*Claxton* v. *Margolis*, 248 Mich. 199, recognized:

"The general rule is that there must be privity of contract between the parties thereto and that no action can be brought upon a contract except by a party to it."

But the court held there was a memorandum in writing, signed by the party to be charged, sufficient to take the case out of the statute.

It is well settled,

a.   that contracts to make a will,

b.   contracts to reimburse another in property for services rendered,

c.   contracts to make one an heir or to treat them as such—

fall within the general exception of contracts creating or resulting in trusts noted by the court in *K. O. M. M.* v. *Sharp, supra.* The theory of recovery in these cases is that it is inequitable for the promisor to receive and retain the consideration moving to him from the promisee or from the person who paid the consideration or performed the contract without having paid the consideration or performed the contract on his part to be paid or performed. In equity, such contracts, where there has been performance by the beneficiary, are enforced, at his instance, on the principle that the promisor having by means of the promise procured the payment of the consideration and the benefit of the performance of the contract to himself, is guilty of fraud in keeping the consideration paid and the benefits of performance received, and repudiating the binding force of the contract by which he procured them and keeping the consideration which moved to him; and equity will treat the promisor and those in privity with him as trustees of the party for whose benefit

the contract was made and specifically enforce the contract against the promisor or those in privity with him, or if the specific property or thing promised has been alienated beyond reach or recall by the promisor, the law will imply a promise to compensate the beneficiary of the contract for its breach and award him damages. The statement in *Smith* v. *Thompson,* 250 Mich. 302, that "The *Maccabee Case* should no longer be held to be a correct exposition of the law of this State relating to such contracts" is *dictum.* The rule of *Smith* v. *Thompson* is not inconsistent with that of *K. O. M. M.* v. *Sharp,* above stated.

Besides the comment of text-writers, the questions involved have been discussed in periodical law literature: Considerations Moving from Third Persons. 9 Harvard Law Review, 233. The Right of a Stranger to Maintain an Action upon a Contract. 11 Central Law Journal, 161. Contracts for the Benefit of Third Persons. 27 Yale Law Journal, 1008. Promises to One of Performance to Another. 24 Case and Comment, 134. The Right of a Third Person to Sue upon a Contract Made for his Benefit. 8 Harvard Law Review, 93. Contracts for the Benefit of a Third Person in the Civil Law. 16 Harvard Law Review, 43. Contract Beneficiaries. 32 Yale Law Journal, 790. History of the Beneficiary's Action in Assumpsit. 3 Select Essays, Anglo-American Legal History, 339.

The abstract question of what the law ought to be is not here, but the concrete question of what the law of this State may be is here for decision.

(a) It has been settled in this State by repeated decisions of the court that at common law specific performance of parol contracts to convey land would be granted if there had been payment of consideration and such performance or part perform-

ance as to take the case out of the operation of the statute of frauds. *Twiss* v. *George,* 33 Mich. 253; *Lamb* v. *Hinman,* 46 Mich. 112; *Putnam* v. *Tinkler,* 83 Mich. 628; *Ruch* v. *Ruch,* 159 Mich. 231; *Hogan* v. *Hogan,* 187 Mich. 278, and cases cited.

(b) It is likewise well settled at common law that contracts to leave property by will may be specifically enforced. Waterman, Specific Performance, § 41, and cases cited; cases cited in note to Pomeroy's Specific Performance (3d Ed.), § 191.

(c) It is well-settled in this State that contracts to leave property by will, if supported by a sufficient consideration and otherwise unobjectionable, are valid and may be specifically enforced. *Faxton* v. *Faxon,* 28 Mich. 159; *Sword* v. *Keith,* 31 Mich. 247; *Mundy* v. *Foster,* 31 Mich. 313; *De Moss* v. *Robinson,* 46 Mich. 62 (41 Am. Rep. 144); *Carmichael* v. *Carmichael,* 72 Mich. 76 (1 L. R. A. 596, 16 Am. St. Rep. 528); *Bassett* v. *American Baptist Pub. Soc.,* 215 Mich. 126 (15 A. L. R. 213); *Jones* v. *Ireland,* 225 Mich. 467; *Smith* v. *Thompson, supra; Jolls* v. *Burgess,* 252 Mich. 437; and

(d) Contracts to make one an heir or to treat him as such are valid and enforceable at common law and have been recognized and enforced in this State. *Wright* v. *Wright,* 99 Mich. 170 (23 L. R. A. 196); *Bassett* v. *American Baptist Pub. Soc., supra;* 36 Cyc. p. 674, and cases cited.

None of these cases militate against the rule as above stated, which is sustained by the great weight of authority, not only in this State but elsewhere. 40 Cyc. pp. 1063–1073 and cases cited.

(12) Notwithstanding *United Fuel & Supply Co.* v. *Sibley Lbr. Co.,* 222 Mich. 401; *Anderson* v. *Thompson,* 225 Mich. 155; *Tapert* v. *Schultz,* 252 Mich. 39, and *Barnard* v. *Huff,* 252 Mich. 258, in the decision of some of which I concurred, subsequent

investigation has satisfied me they are illogical and unsound. If they are to stand—

(a) Section 14368, 3 Comp. Laws 1929, enacted to create an exception in case of mortgage foreclosures to the general rule of contracts, is rendered absurd. The exception created has become the general rule.

(b) Section 14018, 3 Comp. Laws 1929, cited in *Preston* v. *Preston,* 205 Mich. 646, and *Preston* v. *Preston,* 207 Mich. 681, destroys the doctrine of intervention, its basis, and makes all persons who might be permitted to intervene, parties.

(c) To extend 3 Comp. Laws 1929, § 14368 by implication and construction to cases to which by its terms it has no application, reverses a settled principle of statutory construction as applied to enactments in derogation of the common law; and

(d) The vendor's rights under a land contract instead of being analogous to a vendor's lien (*Fitzhugh* v. *Maxwell,* 34 Mich. 138), which arises in favor of a vendor who has sold and conveyed by deed to the vendee, for the purchase money (*Dunton* v. *Outhouse,* 64 Mich. 419), are said to be analogous to those of a mortgagee, where the legal title is in the mortgagor, where the mortgagee has neither legal or equitable title, and may never have had, but holds but a mere mortgage lien.

(e) To reverse a rule fixed and established for centuries, based upon sound reason, logic, and experience, by judicial fiat is to invade the province of the legislature, a co-ordinate department of government.

If this court is wrong, it should get right.

Here, the assignee of the vendee did not assume and agree to pay. Defendant Geistert's liability, if it exists, must be based upon the language of his bid for the property at receiver's sale, by which he acquired only such title, rights, and liabilities as

the receiver had. The receiver had only such title, rights, and liabilities as the Sunset Terrace Resort Company had. The Sunset Terrace Resort Company was not liable for deficiency to vendors on foreclosure. There was no mutuality of contract between the receiver of the Sunset Terrace Resort Company and Geistert, no privity of contract between vendors and Geistert, no right to a decree against him for deficiency at common law, and no statute applicable to land contracts changing the common-law rule. Decree reversed. No costs.

Wiest, J. (concurring in part). I concur in dismissing the bill, but not for the reasons stated by Mr. Justice Potter.

The receiver of the Sunset Terrace Resort Company sold to defendant Geistert the interest of that company in certain land contracts, acquired by way of quitclaim deed from the vendee therein. There never was any assumption by the Sunset Terrace Resort Company of the contract obligations of the vendee in the land contracts. In authorizing sale by the receiver, the court had no power to require the purchaser from the receiver to agree to pay the contracts, and defendant's agreement to pay the vendors was nudum pactum. Privity of obligation between the vendors and vendee in the land contracts did not carry over to the assignee of the vendee by the naked quitclaim deed, nor did liability for deficiency upon foreclosure. The receiver of such assignee was not concerned with anything beyond the mere pecuniary interest of the Sunset Terrace Resort Company in the land contracts. Defendant Geistert cannot be held to pay the contracts.

Butzel, C. J., and Clark, McDonald, Sharpe, North, and Fead, JJ., concurred with Wiest, J.